## ELLIS ET AL. v. ELLIS'S ADMINISTRATOR.

2. A will containing the following clause: "I hereby will and bequeath unto my beloved wife, Catharine M. Ellis, my whole estate, real and personal, after the payment of my just debts, *recommending to her, at the same time, to make some small allowance, at her convenience, to each of my brothers and sisters; say to each one thousand dollars,*" does not create a trust in favor of the brothers and sisters of the testator.

Error to the Chancery Court of the 22d District. Before the Hon. W. W. Mason, Chancellor.

THIS was a bill filed by the plaintiffs in error, the brothers and sisters of Harvey W. Ellis, deceased, against the defendants, to enforce the trust which they allege was created in their favor by the following clause of the last will and testament of said Harvey W. Ellis: "I hereby will and bequeath unto my beloved wife, Catharine M. Ellis, my whole estate, real and personal, after the payment of my just debts, recommending to her, at the same time, to make some small

allowance, at her convenience, to each of my brothers and sisters; say to each, one thousand dollars."

The will was written, and signed by the testator, but was without witnesses attesting its execution.

The chancellor dismissed the bill for want of equity, which is now assigned as error.

B. F. PORTER, for the plaintiff in error.

1. The words used are ample to raise a legacy, or trust.— Harding v. Glenn, 1 Atk. 470, note 1; Malin v. Keighley, 2 Ves. jr. 333, 335, note 1; Tibbits v. Tibbits, Jacob, 148, 19 Ves. jr. 663; Brown v. Higgs, 8 Ves. jr., 561; Parsons v. Baker, 18 Ib. 476; 2 Story's Eq. $ 1068, 1069. The court sits not for the purpose of establising a new rule, but to declare one already made. Per Lord Nottingham, in Cook v. Fontaine, 3 Swans. 600. The rule of construction is admirably expressed in a late case. The testator must be taken to have meant something beyond that which would have taken place had he said nothing. Godkin v. Murphy, 7 Jurist, 506; Spence's Eq. Jur. 529.

2. The complainants are not forced to election in such a case. The doctrine of election rests on some words indicating it in the will. Here there are none. 2 Wms. on Ex'rs, 887, 888; 1 Jarman on Wills, 390; 1 Swanst. 406; 3 Atk. 715; Hilliard v. Burford's heirs, 10 Ala. 977; Warley v. Warley, 1 Bailey's Eq. 398; Tibbits v. Tibbits, 19 Ves. jr. 664.

3. The debts rest upon the personal estate not specially devised—not upon the realty. Warley v. Warley, 1 Bailey, 398; Donne v. Lewis, 2 Bro. C. C. 263; Harmond v. Oglander, 8 Ves. jr. 124; Dunlap v. Dunlap, 4 Dess. 329; Ancaster v. Mayer, 1 Bro. C. C. 462.

ORMOND and PECK, for the defendant in error, made the following points:

1. The will does not create a trust upon Mrs. Ellis which a court of chancery will enforce, because, although it be true that words of recommendation, or expressive of hope, or desire, may be sufficient to create a trust, yet if it is obvious

that the language was not used imperatively, but that a choice was given to the legatee to perform, or not to perform, the recommendation, at his option, this court will not deprive him of it.   See the general doctrine in, 2 Story's Eq. 328, § 1068; Malim v. Keightly, 2 Ves. jr. 335; Sale v. Moore, 1 Sim. 534; Meredith v. Haneage, 1b. 542; Curtis v. Rippon, 5 Maddox, 434, 3d Am. ed. 263; *Ex parte* Payne, 2 Young & Coll. 36; Wright v. Atkins, 1 Turner & R. 157; Knight v. Knight, 3 Beavan, 148; Bardswell v. Bardswell, 9 Sim. 320; Pope v. Pope, 10 Id. first case; Wood v. Cox, 2 Myl. & C. 684; Hill on Trustees, 71; 1 Jarman on W. 332.

2. If we are wrong in this view, and the words of the will are considered sufficient to raise a trust, then we contend this is a case in which the heir should be compelled to elect, whether he will take under the will, or as heir at law.   The present state of the English law seems to be, that an unattested will of realty cannot be read against the heir, unless the legacy is given to him expressly on condition to give up the real estate.   See Story's Eq. 357, note 3; Lord Eldon's opinion in Sheddon v. Goodrich, 8 Ves. 497; Sir Wm. Grant in Brodie v. Barry, 2 V. & B. 130, and Lord Kenyon, in Cary v. Askew, 1 Con. 244; but the rule does not apply where the land is *copy hold*.   All these judges confess themselves unable to understand the distinction, and condemn the rule.   It is an insult to common sense to say, that your Honors cannot read that portion of this will which relates to land, because it is not attested.   See Nutt v. Nutt, 1 Freeman's Ch. 128, where the contrary is held.

3. But conceding that Mrs. Ellis could not compel the heirs to elect, whether they would take under the will, or as heirs at law of the testator, that is not the aspect of this case. This bill is filed by the heirs at law, to enforce a trust—and this court, sitting as a court of chancery, will not compel its enforcement, unless the party asking its aid will himself do justice.   Now it is most apparent, that the testator did not intend that the complainants should take his land and the legacy, for if this is an imperative command, most assuredly the land and the slaves were the means by which he expected his wife would be enabled to pay them, for he left her no money, but on the contrary a large debt to pay, which has

just been extinguished.   A court of equity then, will refuse its aid, unless the complainants will themselves do justice. This is a familiar principle of equity, and it is only necessary to mention the case of a husband applying to a court of equity to obtain his wife's portion—he will be required to make a settlement on her, or the court will not interpose. So if one goes to that court to get rid of usury, he must offer to pay the debt, and interest, or its doors are closed against him.

4. In none of the cases in which words of recommendation are construed to raise a trust, was the will defective. There is a manifest and plain absurdity in raising a trust in favor of a party who, by his own act, is preventing the trustee from acquiring the property on which the trust is to be charged.

5. This suit is premature as the estate has not been settled, and is still in the hands of the administrator.   But as the parties desire the questions of law to be settled, this goes only to the costs.

CHILTON, J.—The will of H. W. Ellis, which we are called upon to construe, is in these words : " The State of Alabama, Tuscaloosa county—Believing it to be the duty of every one to make a disposition of their estate by will, I hereby give and bequeath unto my beloved wife, Catherine M. Ellis, my whole estate, real and personal, after the payment of my just debts, *recommending her, at the same time, to make some small allowance, at her convenience, to each of my brothers and sisters ; say to each, one thousand dollars.* In testimony whereof, I have hereto set my hand, and affixed my seal, this 4th April, 1841."   Signed by the the testator, but not attested by any witness.

It is insisted by the complainants, that the words of the will which I have italicised, create a trust in behalf of the brothers and sisters, and the bill is filed upon that hypothesis.

Did Mr. Ellis intend to create a trust, and make his wife a trustee for his brothers and sisters ?   It is certainly true, that technical language is not necessary to the creation of a trust. It is sufficient, if it clearly appear from the language employ-

ed by the testator, that it was *his intention* to create a trust ; for the intention of the testator, deducible from an examination of the whole will, must in all such cases be the pole-star to guide us to a correct conclusion.

The counsel for the plaintiffs in error has referred us to many authorities, and the books abound with cases, showing that in interpreting the language of wills, the English chancellors, from an early day, have gone great lengths in creating implied, or constructive trusts, from mere recommendatory or precatory words of the testator. These cases are collected and commented on by the able *commentator on equity jurisprudence*, Mr. Justice Story, (2 Com. § 1068, *et seq.,*) who insists, that the doctrine of thus construing expressions of recommendation, confidence, hope, wish, and desire, into positive and peremptory commands, is not a little difficult to be maintained upon sound principles of interpretation of the actual intention of the testator. " It can scarcely be presumed," says this learned author, " that every testator should not clearly understand the difference between such expressions, and words of positive direction and command ; and that in using the one, and omitting the other, he should not have á determinate end in view. It will be admitted on all sides, that where the *intention of the testator* is to have the whole subject as a pure matter of discretion to the good will and pleasure of the party, enjoying his confidence and favor; and where his expressions of desire are intended as mere moral suggestions, to excite and aid that discretion, but not absolutely to control and govern it ; there, the language cannot and ought not to be held to create a trust." 2 Sto. Eq. § 1069.

There can be no doubt, but that if we must follow the earlier English adjudications upon this subject, the words in this will must be construed as creating a recommendatory trust in favor of the complainants. See Massey v. Sherman, Ambler Rep. 520 ; Prevost v. Clarke, 2 Madd. Rep. 458 ; Pr. Ld. Ridesdale, Carey v. Carey, 2 Scho. & Lef. 189. According to these decisions, the words " desire," (7 Ves. 36,) " will and desire," (2 Mer. 437,) " request," (1 Bro. C. C. 489,) " recommed," (2 Ves. 333 ; 19 Ib. 656 ; 1 Sim & Stu. 387,) and the like, have been considered as raising a trust,

and changing a legatee into a trustee. But the doctrine of the English courts of chancery is to some extent departed from by the recent decisions of that country, and a strong desire is manifested to give to such words their natural and ordinary signification and effect.

In Sale v. Moore, 1 Sim. 534, the vice chancellor, (Sir A. Hart,) said, "the first case that construed words of recommendation into a command, made a will for the testator; for every one knows the distinction between them." See also, a similar opinion by Lord Ch. Baron Richards, in Meredith v. Heneage, 1 Sim. 542, and by Lord Eldon in Wright v. Atkyns, 1 Ves. & Beam, 315. In Knight v. Knight, 3 Bevan, 148, Lord Langdale said, in speaking of the creation of such trust, and the examination of the authorities to be consulted in relation to them, "it is, unfortunately necessary to make some distinction between the intention of the testator and that which the court has deemed it to be its duty to perform; for of late years, it has frequently been admitted, by judges of great eminence, that by interfering in such cases, the court has sometimes rather made a will for the testator, than executed the testator's will according to his intention," &c. See 2 Story's Eq. 4 ed., 455, note 2; Hill on Trustees, 72. In Pope v. Pope, 10 Sim. 5, it was held, that a gift by a testator of the capital of his business to his wife, "trusting that she will act justly and properly towards all our children," was the expression of a wish, and not the creation of a trust. The words construed as creating no trust in Wright v. Wright, supra; were, "I trust to the justice of my successors in continuing the estates in the male succession, according to the will of the founder of the family." In a recent case, (Ex parte Payne, 2 Young & Coll. 646,) when the devise was to the testator's daughter, "as some reward for her affection and unwearied and unexampled attention to him during his illness of many years," and adding, "I strongly recommend to her to execute a settlement of said estate, and thereby to vest the same in trustees, for the use and benefit of herself for life, with remainder to her husband, and his assigns for life, remainder to all and every the children she may happen to have, if more than one, share and share alike; and if but one, the whole to such one: or to such other uses as my said

daughter shall think proper; to the intent that the said estate, in the event of her marriage, may be effectually protected and secured," it was held the daughter took an absolute estate.

These anthorities, with many others which might be cited, show the tendency of modern decisions in England, not to extend this doctrine of implied trust from precatory words, but to go back as far as may be consistent with the current of their previous adjudications, to what I humbly conceive to be the true rule of interpretation—that is, to give such recommendatory expressions their natural, ordinary and familiar sense, and having arrived at the true intention of the testator, to let that intention, if lawful, be the rule of decision in the particular case. Thus the court will execute the will of the testator, and not by a forced technical construction of his words, make a will for him.

Applying this rule of interpretation to the case before us, we have no hesitation in pronouncing, that the will of Mr. Ellis does not create a trust in favor of the complainant. He *recommends* to his wife, to whom the will says he gives his entire estate, to make some small advance, *at her convenience*, to each of his brothers and sisters, say to each one thousand dollars. Now it does seem to me, that an ingenuous mind in search of truth, being required to ascertain the intention of the testator, giving to the language employed its ordinary sense, would at once conclude, that the testator never intended the thousand dollar payment to each of the complainants as an imperative command. If he intended it as a command, why did he not use appropriate language? Why not *directly bequeath* to them the money which he merely *recommends his wife* to give? If he designed to fix absolutely the amount to be paid, why use the term "a small allowance?" If such allowance was not intended to be left discretionary with the wife, why make its payment depend upon "her convenience?" Upon the whole will, it is, I think, impossible to resist the conclusion, that the testator, having as he supposed, conferred upon his wife his entire estate, both real and personal, *recommends* to her favorable regard his brothers and sisters, to incite her to the performance of a moral duty, in making to them a *small allowance*, if the con-

dition of his estate, after the payment of his debts, would render it *convenient* for her to do so. The construction of the will, as contended for by the complainants in tleir bill, would most manifestly defeat the intention of the testator. It must be conceded, that his leading object was to make a provision for his wife; that for his brothers and sisters, at most, formed but a subordinate consideration. Now for want of being witnessed, the will is ineffectual to pass the real estate, and consequently it descends to the complainants, who are his heirs at law. If then, it should so turn out, that after the payment of the debts, the personal property should only be sufficient, upon a forced sale, to raise the funds required to pay off these pecuniary legacies, the wife, who as we have said, was doubtless the main object of the testator's bounty, is stripped of all the property. We thus allude to the consequences of such construction, not that the hardness of the case should in any degree tolerate a departure from principle, but to show that such interpretation results in absurdity, and does palpable violence to the clearly expressed intention of the donor.

We have thought it due to the importance of the principle involved, to say this much, as it is for the first time presented before this court. In departing from the earlier English authorities, we are not wanting in respect for the transcendant learning and abilities of the chancellors who delivered the opinions. We only refuse to follow a rule of construction, which many of them acknowledge to have been founded in error, and from which they would gladly have receded if they could. That they, upon this point, have erred, but confirms the declaration in The Book, that "great men are not *always* wise."

The view we have taken of the will renders it unnecessary to investigate the other questions presented by the record. It follows from what we have said, that the chancellor correctly dismissed the bill, and his decree must be affirmed.