By the Court. Duer, J.
Francis Dominick, deceased, by his last will and testament, devised eight lots of ground in this city, which are described in the will and the pleadings, to his daughter Margaret, during her life, and added to the devise these words : “ with power to give the same by deed or by will, to any of the male descendants of my family of the name of Dominick, and their heirs.” The daughter, Margaret, by her will devised two of the lots to a nephew, who, subsequently to the execution of her will, died in her lifetime, and as by his death the devise in his favor became lapsed, the power given to the daughter, as to those two lots, remains unexecuted, and the question is, whether the power, as created, implied a trust, the execution of which has devolved upon the court. In other words, was the power merely discretionary, or must it be construed as imperative ? If the exercise of the power rested in the mere discretion of the donee, it is a necessary consequence of the failure in its execution that an absolute fee is now vested in the heirs at law, or in the residuary devisees ; but if the power, as imposing a duty of execution, is to be regarded as imperative, it has fastened a trust upon the lands, which we are bound to declare and enforce.
The article of Powers in the revised statutes, declares that every power involves “ a trust, when the disposition which it authorizes is limited to be made to any person or any class of persons other than the grantee of the power,” (1 R. S. 734, § 95, sub. 1,) and a subsequent section provides, that “ if the trustee of a power with the right of selection shall die, leaving the power unexecuted, its execution shall be decreed in equity, for the benefit equally of all the persons designated as objects of the trust.” (p. 735, § 100.) As the testator in this case died before the revised statutes were in force, these provisions are not applicable, as a positive law, to the construction of his will, but they are applicable if they are not introductory of new rules, but only declaratory of those which the decisions in equity had previously established. That they were regarded by the revisers as simply declaratory, we think is fairly to be collected from the language of then* notes, and upon a careful examination of the cases, we *560 are satisfied that such is their true character, and consequently that they supply the rules which must govern our decision.
We deem it unnecessary to sustain this opinion by a minute and critical analysis of the numerous cases upon this subject which are to be found in the books, and most of which were referred to upon the argument. It is not to be denied, that the language of the court, in some of these cases, favors very strongly the position upon which the learned counsel for the defendants insisted, namely, that words of mere authority or power are not sufficient to create a trust, unless the estate or interest of the donee in the property which is the subject of the power is commensurate with the power itself, and that where his estate or interest is less extensive, as where a tenant for life is authorized to dispose of the fee, the power is not to be construed as imperative, unless other expressions or provisions are to be found in the will, manifesting the intention of the testator that it shall be executed, and therefore imposing its execution as a duty. But whatever support these positions may seem to derive from the earlier cases—and it was upon these, chiefly, that the counsel relied—we apprehend, that they are not only inconsistent with, but are distinctly refuted by the later decisions. In the earlier cases, there is much confusion and uncertainty as to the proper construction of powers similar to the present; and of this no more striking proof can be given, than results from a comparison of the decisions of Lord Hardwicke in Harding v. Glynn, (1 Atk. 496,) and in the Duke of Marlborough v. Lord Godolphin, (2 Ves. 61,) decisions which no effort of legal subtlety, as both Lord Eldon and Lord Cottenham have virtually confessed, has hitherto been able to reconcile.
But the uncertainty in which the earlier cases involved the question, we are convinced, no longer exists. It was terminated, in a great measure, by the judgment delivered by Lord Kenyon, when master of the rolls, in Pierson v. Garnett, (2 Bro. Ch. Ca. 38.) It was terminated by the plain, broad, and practicable maxim which he there laid down, and which has since been a guide to his successors, namely, that a power of disposition limited to a class, in all cases implies and creates a trust, where, *561 the property which is gimen is certain, and the objects, (that is, the persons,) to whom it is gimen a/re also certain /” evidently meaning, that where this certainty exists, the trust arises, whether the words are those of positive direction, or of mere recommendation, or mere authority. And the maxim or rule thus interpreted, we conceive to have been the basis of the decree that a trust existed in favor of those descendants, who, in that case, were the objects of the power. Lord Thurlow, in affirming the decree of the master of the rolls, which he did without hearing counsel in its support, expressed himself with his usual brevity and decision, saying, “ where the object and the property are both certain, the rule (i.e., that there is a trust) must be adhered to.” (2 Bro. Oh. Oa. 230.) It is here proper to remark, that this general rule, although more clearly enunciated by Lord Kenyon, had been plainly recognized by Lord Thurlow in each of the previous cases of Harland v. Trigg, (1 Bro. Ch. Ca. 142,) and Wynn v. Hawkins, (Id. 172;) the trust in the first of these cases being held to have failed solely from the uncertainty of its objects, and, in the second, from that of the property.
It is true, that in Pierson v. Garnett, there were strong expressions in the will manifesting the desire of the testator that the power should be executed, and it is certain that in numerous cases such expressions, and many much weaker, are held to be imperative, that is, to impose a duty of execution; but it is equally certain that it was not upon the force of these expressions that either the master of the rolls or the lord chancellor laid the stress of his opinion. On the contrary, Lord Kenyon said, it would be lamentable if a distinction were to be raised upon slight words borrowed from the civil law, such as “ Peto, Rogo,” &c.; and Lord Thurlow, that the use of such words is only important as “ making a designation of the object,” the plain inference being, that such words are useless, if the “ designation” is otherwise certain. It is, indeed, difficult to understand why the same effect should not be given to words of mere authority, or power, as to words of recommendation, entreaty, or desire. A power, positive in its terms and limited in its execution to a particular class, is not only sufficient, but *562 it seems to us conclusive evidence of the desire of the grantor that it shall be executed. The desire of its execution can be the only motive for its creation, and if the mere wishes of a testator are to be followed as a law, it is surely immaterial whether they are declared in terms, or collected by a necessary implication.
There is another circumstance, however, which may be deemed important, which distinguishes Pierson v. Garnett from the present case. The power was a power of distribution merely, without a right of selection. Hence, as all belonging to the designated class were entitled to a share under an execution of the power, it might well be construed as a gift to all, and therefore a trust for all, should the power remain unexecuted. But to the objection which this distinction may be thought to create, the conclusive reply will be found in the cases to which we shall next advert. The first of these is Harding v. Glynn, (1 Atk. 469,) in which the power 'which was held to create a trust in favor of the next of kin of the testator, was to give certain personal pmperty to arid among such of Ms relations as the donee of the power might think most deserving; words, which certainly give as large a discretion as those in the present will. We shall not, however, dwell upon this case, as it is briefly and imperfectly reported, and, as we have already intimated, was contradicted, and, as some have thought, overruled by Lord Hardwicke in the case of the Duke of Marlborough v. Lord Godolphin.
Owing to these circumstances, the authority of the principle upon which Harding v. Glynn was decided, was for a long time in abeyance, but was fully restored and firmly established by the next ease which we shall cite. A case which seems to have undergone as thorough and elaborate a discussion, as any found in the reports, and which in England has settled the law, that a power of disposition to a particular class, is a trust in favor of all belonging to the class, even when the power is limited in its actual execution to such as the donee may select. This leading case, Brown v. Higgs, was first heard by Lord Alvanley, when master of the rolls, (4 Ves. 708,) was re-heard, (5 Ves. 495,) by the same eminently learned and cautious judge, *563 (such is the testimony borne by Lord Eldon to his judicial character,) was then heard on an appeal from the rolls by Lord Eldon himself, (8 Yes. 561,) and was finally carried by an appeal from his decree to the House of Lords, (2 Sugden on Powers, 276,) the original decree being sustained and affirmed in each subsequent stage in the cause. The power in this case was created in terms of mere authority. “ I authorize and empower.” It was given to John Brown, a nephew of the testator, to pay over the rents and profits of certain real estate, deducting prior charges, as follows: “To such children of my nephew Samuel Brown, as my said nephew John Brown shall think most deserving and will make the best use of it, or to the children of my nephew William Augustus Brown, if any such there are or shall be.” The donee of the power, John Brown, died in the lifetime of the testator, and the question was, whether by his death the devise had wholly lapsed, or the power was to be considered as a trust, the execution of which had devolved upon the court.
The counsel for the defendant strenuously and very plausibly insisted, that the large discretion which was given to the donee, repelled the presumption of a trust in favor of all the children, who were the objects of the power, since it was plainly not the intention of the testator that all should take. The gift, as made by the testator, was not to all, but only to such as the donee might select, and consequently, that no selection having been made, there was no gift at all. To declare a trust in favor of all the children, was not to execute, hut to defeat the intention of the testator; nor was it possible for the court to make a selection ; the power of doing so being a personal confidence reposed in the donee; a discretion, which it was meant that he, and he alone, should exercise.
The master of the rolls, in giving his opinion upon the rehearing, referred to Harding v. Glynn as exactly in point, remarking that the only distinction was, that in that case there were words of request and desire, (5 Yes. 503, 506,) and this distinction, in a subsequent part of his opinion,, he rejected as wholly immaterial. As to the construction of the power, he held that all the children were to be considered as the objects *564 of the bounty of the testator, and that the power given to the nephew, John Brown, was to be regarded as a power merely of selection. The gift was to all, although the donee of the power, in the exercise of his discretion, might limit it to some. The court could not take upon itself the exercise of a similar discretion, but could carry into effect the intention of the testator by declaring a trust for all who were the objects of his bopnty; and in several passages of his opinion, the learned judge referred to Pierson v. Garnett, as having settled the principles by which he was governed.
The case of Longmore v. Brown, (7 Ves. 124,) preceded the final decision of Lord Eldon in Brown v. Higgs, but it was decided upon the same principle and partly on the authority of the prior decree of Lord Alvanley. The power, which was given to executors, was declared in the will itself to be a trust, but the case is still important as showing that where a discretion is given to the devisees of a trust power in the selection of its objects, if the discretion is not exercised, the trust will be enforced in equity, for the equal benefit of all to whom any portion of the property might have been given. The trust in this case was, that the executors should divide the personal estate of the testator, to and amongst two brothers and a sister or their children. As the executors might have given a portion, or even the whole, to the children, it was held that they were entitled to share equally with their parents, and the master of the rolls (Sir William Grant,) decreed a distribution per capita upon this principle. His decision is, therefore, a pertinent' authority, to prove that a trust is not converted into a mere power by the non-execution of which it is defeated, by the addition merely of the right of selection.
Brown v. Higgs has been followed in numerous cases, and particularly in Parsons v. Barber, (18 Ves. 475,) Prevost v. Clarke, (2 Maddock, 458,) and Forbes v. Ball, (3 Merivale, 437.) The first of these, Parsons v. Barber, was not cited upon the argument. It is a strong case, and the master of the rolls placed his decision, most distinctly and emphatically, upon the plain and sensible rule of Lord Kenyon and Lord Thurlow, that a trust is raised whenever the objects and the property are certain.
*565 The cases that have now been cited leave unanswered only this single objection, that the construction which they follow is not applicable, when the estate or interest of the donee of the power is less extensive than that which the power enables him to create.
It is not easy to understand why this circumstance should be permitted to vary the construction of the power, since where the terms are the same, they would seem to afford the same evidence of the intention of the testator, whatever may be the nature of the estate. Whether it is annexed to a fee or to a life estate, as the objects and the property are certain, no reason seems to exist why the general rule should not be equally applied. (In truth, the donee of the power is in both cases only a tenant for life, since where a power annexed to a fee is construed as a trust, its necessary effect is to cut down the fee into a life estate. (Wright v. Atkyns, 17 Ves. 255.) But upon whatever grounds this objection may rest, it is met and refuted, like those before stated, by express decisions.
In Buck v. Wade, (3 Ves. & Bea. 198,) the testator gave a life estate to his wife, with a power to dispose of one third of the principal of his estate and effects, among such of her relations as she might think proper. Ko objection was raised on the ground that she had only a life interest, and the master of the rolls decided, that as the power was not general, but was limited to a particular class, it created a trust in favor of the next of kin of the wife. There were expressions, however, in this will, (“ it is my will and desire,”) that if referred to the disposition to be made under the power—and the master of the rolls appears so to have understood them—were clearly imperative, and hence the authority of the decision, as bearing upon the question now under consideration, may be doubted.
In Grierson v. Kersopp, (2 Keen, 653,) a life interest only was given to the widow of the testator, with the power to sell certain real estate, and to distribute the proceeds of the sale amongst the children of the testator, as she might think proper. All the children died in the lifetime of the widow, and their personal representatives were held to be entitled, plainly upon the ground that they had a vested interest as cestuis que trust, which could *566 not be defeated by a failure in the execution of the power. It must be admitted, however, that in this case also, the terms in which the power was created, were such as plainly to impose a duty of execution.
We have referred, however, to the two last cases as plainly contradicting, and therefore overruling, Crossling v. Crossling, (2 Cox Ch. R. 396,) and other similar cases, in which, although the terms of the power were certainly imperative, and were not denied to be so, yet in consequence of the failure in its execution, it was held that the fee descended to the heir at law, discharged from any trust in favor of the objects of the power, and this upon the sole ground that the donee of the power had only a life estate.
The cases we shall next cite, it will be seen, are not liable to the exception that the power was created in terms that rendered its execution imperative. In Whetmore v. Trelawney, (6 Ves. 129,) the testator gave to his wife the interest of certain stock during her life, with power to devise by her last will, five thousand pounds of the principal amongst her nieces. One of the questions was, whether this was a mere power, the execution of which was necessary to enable the nieces to take any thing, or whether they had a vested interest, independent of the power. This question, in the first part of his opinion, Lord Eldon refused to decide, yet in a subsequent passage he in effect decided it, by holding that had the wife died during the lifetime of the testator, the nieces would have been entitled to the £5000 at his decease, plainly meaning, would have been so entitled under his will, which they could only be by construing the power to the wife as equivalent to a gift to them; that is, by construing the power not as discretionary, but as imperative.
In Brown v. Pocock, (6 Sim. 257,) the words of the power are not recited, but they seem to have been those of mere authority, and it is plain that the donee had only a life interest. He was a mere annuitant. Hie substance of his power, was to leave by will the moiety of £8000 in stock, for the benefit of his wife and children, and the vice-chancellor was of opinion that it was a gift to them, subject to the execution of the power, and the power not having been well executed, he decreed that they were entitled to a moiety of the stock as joint tenants.
*567 The next ease is Grant v. Lyman, (4 Russ. 292.) The testator gave a life estate in leasehold property to his wife, with power to dispose of the same after her decease, to any of his family she might think proper. She made an appointment under the power to a relative of the testator more distant than the next of kin, and the master of the rolls held it to be a good execution of the power, but he also held, that had the power not been executed, the next of kin to the testator would have been entitled, which they could not have been unless the power was construed as raising a trust in their favor. And that such was his meaning is rendered certain by Ms referring to Harding v. Glynn, in which this construction was adopted, as a controlling authority. This case is also important as proving that the learned judge disregarded entirely the supposed distinction between words of request and those of mere authority. It must he admitted, however, that in this, as in the preceding cases, the objection that the donee -of the power had only a life interest, was not distinctly raised, and therefore was not passed upon.
But the objection was raised, and folly argued, in tbe next case, the last to which we shall refer, Burrough v. Philcox, (5 Mylne & Craig 72,) a case which, we think, is in no respect distinguishable from the present, and the decision in which, if admitted to be law, and looking to the grounds upon which it was placed, is an answer to the entire argument, upon the part of the present defendant. The power was given to a tenant for life, its terms were those of mere power, not of discretion, reeommenda: tion, or request; and although it was limited in its execution to a particular class, the donee had an unlimited right of selection. It was a power to dispose of by will, all the real and personal estate of the testator amongst his nephews and nieces, or their children, either all to one of them, or to as many of them as the donee of the power might think proper. The counsel for the defendants relied upon each and all of the distinguishing circumstances that have been mentioned, as proving that tire power did not impose a duty of execution, but vested in the donee an absolute discretion, wholly inconsistent with -the supposition, that the nephews and nieces, and their children, took any interest as sestiMS que trusty and the lord chancellor overruled all their *568 arguments and objections, by holding that the power was not discretionary, but imperative, and was in effect a gift to all the nephews and nieces, and their children, subject only to the power of selection given to the donee. The case is -very fully reported, and the opinion of Lord Cottenham is particularly able and lucid, and leaves no doubt whatever as to the true grounds of his decision. He remarked, (page 65,) that much argument had been urged upon the ground, that the donee of the power had no estate in the property under the will, beyond a life estate; but that in his view of the case, this was quite immaterial. It was not, indeed, one of those cases in which expressions are added, as to the disposition of the property, that are held per se to fix a trust upon the gift, but that it was sufficient, if a declaration was found in the will, of who, in the events that had happened, were to be the cestms que trust, and when that is sufficiently expressed, it is immaterial whether the donee of the power be also a trastee, or whether the trust be vested in others; in other words, it is immaterial in whom the fee is vested, at the time the power is to be executed, if the persons to whom the property is to be, or may be, given by an execution of the power, are designated with sufficient certainty. There is then a trust in their favor.
In reply to the objections arising from the unlimited right of selection, and the absence of recommendatory or precatory words, his lordship observed, that it was shown by the cases to which he had referred, (Harding v. Glynn, Brown v. Higgs; and Witts v. Bodington, 1 Atk. 469, stated more fully from the register’s book, 5 Ves. 501,) that when there is a general intention in favor of a class, and a particular intention in favor of individuals of that class to be selected by the donee of the power, and the particular intention fails from that selection not being made, the court will cany into effect the general intention in favor of the class. In every such case, the power is so given as to make it the dtity of the donee to execute it, and the court will not permit the objects of the power to suffer by his negligence in its execution, but fastens a trust upon the property for their benefit. And after a careful analysis of the opinions of the master of the rolls, and of Lord Eldon, in Brown v. Higgs, his lord- . ship arrived at the conclusion,toiat the general intention of the *569 donor of the power to give to a class, is in all cases sufficiently-proven, when an authority and power are confided of selection and distribution; thus plainly saying, that words of mere authority 1 have the same efficacy in creating a trust, as a positive direction^ The words, in their ordinary acceptation, may be djggretionayy, but in a court of equity are mandatory. Connect together the several propositions, in the opinion of Lord Cottenham, and they will be found to correspond exactly with the provisions of the revised statutes, that a power is always a trust, when a disposition is limited to be made to a class; and that if it is accompanied by a right of selection, and remains unexecuted, its execution must be decreed in equity, for the benefit equally of all who are its objects.
It was true, as was argued by the learned counsel for the present defendants, that in Burrough v. Philcox, the lord chancellor referred to other expressions in the will of the testator, which he regarded as imperative, but it is certain that he referred to them only as fortifying the conclusions on which he had before rested, and not as necessary grounds of his decision. ■ Had no such expressions or provisions been found in the will, he would have pronounced the same decree.
Hpon the authorities, and for the reasons that have now been stated, we are clearly of opinion that the power in the will of the testator, Francis Dominick, created a trust which we are bound to enforce, and had there been no previous cases upon the subject, a just regard to the intention of the testator would have led us to the same conclusion. A power, when the disposition which it authorizes is limited to a particular class, unless its execution is made in terms to depend upon the mere discretion of the grantee, always creates a reasonable presumption that the grantor means that it shall be executed, and his intention thus ascertained, a court of equity is bound to effectuate by construing the power as imperative.
It remains, then, only to inquire how and in whose favor the trust we have declared is to be executed. Its objects are the “ male descendants, bearing the name of Dominick, of the family of the testator.” The word “ family” is exceedingly vague and indefinite; so much so, that upon the sole ground of the uncer *570 tainty of its application, Lord Thurlow, in Harland v. Trigg, 2, Bro. Ch. Ca. 142, refused to decree the execution of a power as a trust; but his decision is not very consistent with subsequent cases, and it may now be considered as settled, that it is the duty of the court to give, if possible, a definite meaning to the ambiguous term “family,” by a reference to the context of the will, and to the relative situation of the testator. Thus, where the trust related to real estate, the family of the testator was held by Lord Eldon to mean the heirs at law. (Wright v. Atkins.) In Grant v. Lyman, where the trust was of personal property, and the testator died without children, it was confined to his next of kin. In MacLerath v. Bacon, (5 Ves. 159,) a power of appointment for the benefit of a married woman and her family, was construed, upon the whole will, to include her husband, and an appointment in his favor was, therefore, sustained; and in Barnes v. Vatch, (8 Ves. 604,) a disposition in favor of the families, of certain persons named in the will, was restricted to their children, exclusive of the parents. We agree with the counsel on both sides, that it is proper to adopt this restricted interpretation in the present case, and therefore hold, that by the “ family” of the testator, his children only are meant. In construing the power, the children are to be considered as the stock of descent, and their male descendants bearing the surname of Dominick, the objects of the trust.
In England, it is settled by several decisions, that where a power is given to distribute personal property among the relations of the testator, with a right of selection, although the donee may execute the power in favor of any relative, however distant, of the testator, yet if its execution devolves as a trust upon a court of equity, it will be confined to the next of kin entitled to take under the statute. (Harding v. Glynn, Grant v. Lyman, before cited; Cole v. Wade, 16 Ves. 27; Mason v. Savage, 1 Scho. & Lef. 112.) And it occurred to us upon the hearing, that governed by analogy, it might become our duty to declare, that only those male descendants are entitled, who at the death of the donee of the power were competent to take under the statute of descents, and that in fixing their relative shares, they must be held to take per stirpes and not per capita, but upon further con *571 sideration we are satisfied that the reasons which led to the adoption of the rule in respect to relations, have no application to the present case, and that the supposed analogy does not exist. The execution, as a trust, of a power to distribute among relations, if the term were held to include all related by blood to the testator, would be impracticable. There are no means by which the persons so entitled can be ascertained, and the gift would be void for uncertainty. (2 Bro. Oh. Ca. 127; 4 Russ. 272.) But, as Lord Thurlow has observed, there is no such hazard, when the power is limited in its execution to the descendants of a testator, or of any other living person. The persons constituting the class may then, without difficulty, be ascertained, and the number will usually be less than of the next of kin of a person dying without children. (2 Bro. Ch. Ca. 231.) We therefore decide that all the male descendants of the children of the testator, bearing the name of Dominick, who were living at the death of his daughter Margaret, were entitled, as objects of his trust, to equal shares as tenants in common. We have found only three cases in which a disposition under a power was limited to be made to a class of descendants eo nomine, and in each of these, it appears to have been held that the persons forming the class were entitled to take per capita and not per stirpes. (Pierson v. Garnett, Parsons v. Barber, before cited; Crosby v. Clare, Amb. 397.) The names of all the persons who are entitled, under the construction of the trust which we have adopted, are set forth in the pleadings, and it is alleged that all are now before us as parties in the suit; but when the rights of a class are concerned, it is the invariable practice of the court to ascertain by an express inquiry, who, as belonging to the class, are the persons entitled.
There must, therefore, be a reference to a suitable person to ascertain and report what male descendants of the children of the testator, bearing' the name of Dominick, were living at the death of his daughter Margaret, and are now living; and if any then living have died, who aip entitled as their heirs or devisees ; and the same reference must also take a proper account of the rents and profits received or accrued since the death of Margaret. *572 All further directions are reserved until the coming in of his report.
We add a single remark in conclusion. It may he thought that we have bestowed unnecessary pains upon the consideration of a question which, owing to the provisions of the revised statutes, it is not probable will again become a subject of legal discussion. But in truth, there are various provisions in the • article of Powers in the revised statutes, upon the construction and application of which the observations that have been .made, and the authorities that have been cited, maybe found hereafter to have a material bearing.