ANNIE COOKE LAWRENCE, AN INFANT, BY HER GUARDIAN AD LITEM, APPELLANT, *v.* SARA L. COOKE, RESPONDENT.

*Will — what words are sufficient to impress a trust upon an estate devised.*

A testator, by the sixth clause of his will, gave, devised and bequeathed all the residue of his estate, both real and personal, to his daughter, the defendant, to have and to hold the same unto her and her heirs and assigns forever." The seventh clause reads as follows, viz. : "I commit my granddaughter, Annie C. Lawrence, child of my daughter Annie, now deceased, to the charge and guardianship of my daughter Sara L. Cooke, in whose honesty, good will and

integrity I repose the utmost confidence. I *enjoin* upon her to make such . provisions for said grandchild out of my residuary estate now in her hands in such manner, at such times and in such amount as she may judge.to be expedient and conducive to the welfare of said grandchild, and her own sense of ' justice and Christian duty shall dictate.

*Held*, that the residuary estate devised to the daughter was impressed with a valid enforceable trust in favor of the granddaughter, the amount of such trust and the time and manner at and in which it should be created being left to the discretion of the daughter. (DAVIS, P. J., dissenting.)

APPEAL from a judgment, entered upon the trial of this action by the court without a jury, dismissing the plaintiff's complaint.

By the complaint in this action it appeared that in the month of December, 1878, one Chauncey L. Cooke, the grandfather of the plaintiff, died at the city of New York, leaving a last will and testament, dated December 18, 1877, which was afterwards admitted to probate.

It further appeared thereby that the residuary estate which passed to the defendant under this will was of the value of about $150,000, and yielded an income of about $7,500 annually; that the plaintiff is an infant of about six years of age, and resides with her father, William H. C. Lawrence, in the State of Massachussetts, and has no means of support of her own, except an annual income of $164.34, derived from a provision in the will of her maternal great-grandfather; and that in the month of March, 1880, and again in January, 1881, the plaintiff, through her father as her general guardian, requested the defendant to make such provision out of said residuary estate, expedient and conducive to the plaintiff's welfare, as was enjoined upon the defendant by the sixth and seventh clauses of the said will, and that said defendant neglected and refused, and has ever since neglected and refused to make any provision whatever for the plaintiff out of said residuary estate.

The plaintiff, therefore, asked judgment, declaring that a trust was imposed upon the defendant in favor of the plaintiff by the terms of the will, and that the court determine and make such provision for the plaintiff out of the said residuary estate as should be conducive to her welfare within the meaning of the will 'of her grandfather.

To this complaint the defendant answered, admitting the execution and probate of the will, but denying that it created any trust in

favor of the plaintiff, or that the residuary estate amounted to the sum named in the complaint, and also denying the alleged refusal of the defendant to make any provision for the plaintiff.

*Henry W. Johnson,* for the appellant.

*W. R. Darling,* for the respondent.

BRADY, J.:

The object of this action was to obtain a construction of the will of Chauncey L. Cooke, late of the city of New York, deceased, who was the grandfather of the plaintiff. The dispute is predicated of the sixth and seventh clauses of the will which are as follows:

"*Sixth.* The residue of my estate, both real and personal, of whatever name or kind, I give, devise and bequeath to my daughter, Sarah L. Cooke, to have and to hold the same, unto her and her heirs and assigns forever.

"*Seventh.* I commit my granddaughter, Annie C. Lawrence, child of my daughter Annie, now deceased, to the charge and guardianship of my daughter Sarah L. Cooke, in whose honesty, good-will and integrity I repose the utmost confidence. I enjoin upon her to make such provisions for said grandchild, out of my residuary estate now in her hands, in such manner, at such times and in such amounts as she may judge to be expedient and conducive to the welfare of said grandchild, and her own sense of justice and Christian duty shall dictate."

It was contended, on behalf of the plaintiff, that a trust was created by the seventh clause, its language amounting to an injunction and command that the grandchild therein named should be provided for. The learned justice in the court below, after a thorough examination of the brief and authorities submitted for his consideration arrived at the conclusion that no trust was created by the seventh clause. And this view was predicated of certain American cases which, as he thought, established the rule by which he was to be governed.

It seems to have been assumed, and properly, that if the word "enjoin" amounted to an injunction or command the plaintiff would be entitled to judgment; and the whole controversy depends

first, upon the intent of the testator and secondly upon the meaning and force of that word as employed in the seventh clause. This view is adopted for the reason that although there are numerous cases in which it is declared that a mere request or recommendation to do the thing named in connection with the bequest or devise cannot affect the estate previously created and to which it refers, no case has been cited, and none has' been found, in which the language employed in the seventh clause by the testator has been so imperious in character as the word enjoin. The meaning of that word, as it is explained by the learned justice in the court below, referring to the lexicographers Webster and Johnson, is by the former "to order or direct with urgency; to admonish or instruct with authority; to command," and by the latter as follows: "This word is more authoritative than ' direct,' and less imperious than a command; it has the force of pressing admonition with authority—as a parent enjoins on his children the duty of obedience. But it also has the sense of command, as the duties enjoined by God in the moral law." Worcester defines it "to direct earnestly; to urge, to admonish, to prescribe, to direct with authority."

The language used by the testator in the numerous English cases cited on behalf of the defendant, does not in any one of them amount to a command or injunction. For example, in *Sale* v. *Moore* (1 Sim., 534) the testator gave the residue to his wife, recommending to her and not doubting that she would consider his near relations.

In *Meredith* v. *Heneage* (1 Sim., 542) the testator gave his real and personal estate to his wife in the full confidence that in her future disposition of it she would distinguish the heirs of his late father, by devising his whole estate, together and entire, to such of his father's heirs as she might think best deserved her preference. And, again: "I seriously and warmly entreat my said wife, at her decease to settle," etc.

In *Knight* v. *Boughton* (11 Clark & Fin. App. Cases, 513, H. of L.) the language was: "I trust to the liberality of my successors to reward any others of my old servants and tenants according to their deserts, and to their justice in continuing the estate in the male succession," etc.

In *Bardswell* v. *Bardswell* (9 Sim., 319) the estate was given to

a son, well knowing that he would discharge the trust that the testator reposed in him by remembering the testator's sons and daughters (naming them). So in *Lambe* v. *Eames* (Law Rep., 1870, Eq. Cases, vol. 10, p. 267) the testator, by his will, gave his wife his freehold and personal property, to be at her absolute disposal in any way she might think best, for the benefit of herself and family. So in the case of *Reeves* v. *Baker* (18 Beav., 372) the devise was to the wife, her heirs and assigns forever, being fully satisfied that she would dispose of the estate given, by will or otherwise, in a fair and equitable manner.

And in *Howorth* v. *Dewell* (29 Beav., 18 [1860]), the devise was to the testator's wife, with power to dispose of the same among his children or any of them for such interest, temporary or lasting, as she should see fitting. So in *Brook* v. *Brook* (3 Sm. & Giff.; 280) copyholds were devised to a married woman as sole and separate property, with power to appoint the same to her children and husband, in such way and proportions as she might think fit. So in *Curtis* v. *Rippon* (5 Mad. Ch., 434) the testator gave all his property to his wife, trusting that she would use it for the spiritual and temporal good of herself and children, remembering always the church and poor. So in *Winch* v. *Brutton* (14 Sim., 379) the testator recited that he was desirous of making suitable provision for his wife, as well as for his daughter and grandchild; but in order to mark his unbounded confidence in his wife, and his belief that she would be actuated by the most maternal regard towards his child, he gave her all his property for her own use and benefit and disposal absolutely, implicitly relying on her attachment to his daughter and granddaughter.

In *Greene* v. *Greene* (3 Irish Rep. Eq., 629), the testator gave his property to his wife, well knowing, as he said, her sense of justice and love to her family, and feeling perfect confidence that she would manage the same to the best advantage and benefit of her children. So in *Lefroy* v. *Flood* (4 Irish Ch. Rep. [N. S.], 1, BRADY, L. C.), the devisee bequeathed his property to a person named, with an earnest recommendation that a certain thing should be done.

These same characteristics are apparent in *McAlinden* v. *McAlinden* (11 Irish Rep. Eq., 219); *Reid* v. *Atkinson* (5 id., 373);

*Palmer* v. *Simmonds* (2 Drewry Ch., 221); *Wynne* v. *Hawkins* (1 Brown's Ch., 179); *Ellis* v. *Ellis* (10 Weekly Notes, 18). The American cases present the same formula. For example, in *Hess* v. *Singler* (114 Mass., 66), the testator said, "I hereby signify to my son my desire and hope that he will provide by will or otherwise, that, if he have no lawful issue living, the property which he will take under the will will go in equal shares to the children of my brother and sister." So in *Jackson* v. *Housel* (17 Johns., 281), the words were, "I leave and bequeath to my beloved wife, and wish her to educate my two daughters with care, and to treat them with kindness and affection, without any devise or bequest." So in *Paisley's Appeal* (70 Penn. St., 153), there was a devise by the testator to his wife of rents and profits for her support, and the support and maintenance of his children, under the direction of his executors. So in *Gilbert* v. *Chapin* (19 Conn., 342), the language was, "after payment of my just debts, I give, devise and bequeath all my estate, real and personal, to my wife A., her heirs and assigns, forever, recommending her to give the same to my children, at such times and in such manner as she shall think best." There were similar characteristics in *Harper* v. *Phelps* (21 Conn., 256); in *Pennock's estate* (20 Penn. St., 268); and also in *Ellis* v. *Ellis, Administrator* (15 Ala., 296); and in *Lines* v. *Darden and Wife* (5 Fla., 51), which was a kindred case, the testator expressed the same will and desire. In all these cases it was held that an absolute fee or estate had been given or created of the estate previously devised, and that the language of recommendation, etc., was precatory and not of command, the testator expressing his wish or recommendation, or desire, or making the suggestion which he deemed sufficient to affect the quality of the estate previously created by the terms of the will.

In the cases referred to by the learned justice in the court below, namely *Foose* v. *Whitmore* (82 N. Y., 405), the language was, "I give and bequeath all my property, real and personal, to my beloved wife Mary, only requesting her at the close of her life to make such disposition of the same among my children and grandchildren, as shall seem to her good." It was held that the gift was absolute, the concluding words being merely words of suggestion and not of direction or command, and did not therefore create a trust.

In the case of *Parsons* v. *Best* (1 N. Y. Sup. Ct. [T. & C.], 211), also referred to by the learned justice, the language was, perhaps, more imperative than in any of the cases referred to ; but the court, expressing the rule which is quite familiar, namely, that the intention of the testator, when it can be ascertained, is the control ing rule of interpretation, held that the wife took the whole estate in fee, such having been his intention.

In *Roseboom* v. *Roseboom* (81 N. Y., 356), also cited by the learned justice, there was a gift to the wife of one-third of all the testator's property, both real and personal, and the control of his farm as long as she remained a widow, and at her death all the property, both real and personal, was to be equally divided between his eight children. In an action for the partition of the farm it was held that the widow took a fee of one-third of the premises. This case was disposed of upon the evident intention of the testator as to the share of his property which she should enjoy.

In the case of *Clarke* v. *Leupp* ( 14 Weekly Dig., 206), also cited by the court below, the testator gave and bequeathed to his wife all his property, real and personal, and appointed her his true and lawful attorney and sole executrix to take charge of his property after his death, and retain or dispose of the same for the benefit of herself and children above named. It was held that she took an absolute title to all his estate, because it was not intended by the words succeeding to limit or cut down the absolute gift.

From this reference to many cases, the number of which might be multiplied, it is quite apparent that none of them, in the attempted limitation or restriction of the quality or nature of the estate created, present a question precisely like that which is to be determined in this case, although they approximate. In considering such a question the first and paramount rule to be applied is to ascertain, if possible, the intention of the testator. Viewing the seventh clause from that standpoint, it seems to be very clear that the testator intended his granddaughter should be provided for, and he so expressed himself, committing her as he did to the charge and guardianship of his daughter Sarah, in whose honesty, good will and integrity he reposed the utmost confidence. But he did not rest upon that statement, thus merely expressing his wishes upon the subject. If he had the case would have presented features

similar to the adjudications to which attention has been called. But he proceeded to say : " I enjoin upon her to make such provision for said grandchild out of my residuary estate now in her hands in such manner, at such times and in such amounts, as she may judge to be expedient and conducive to her welfare and her own sense of justice and Christian duty shall dictate."

The clause, therefore, was not one which merely expressed a hope, or wish or confidence, that the thing contemplated should be done. The testator's confidence was expressed in the honesty and integrity of his daughter as to the character of the provision to be made out of the residuary estate in her hands, and as to the manner in which it should be employed or used for that purpose, not only as to time but amount; and to that extent, and that only, was his confidence expressed. As to the appropriation it was not merely a hope, wish, desire or recommendation, but an injunction. It was a command, established by the use of the word *enjoin*, by which he ordered or directed a certain thing to be done with urgency, admonished or instructed with authority, commanded and coupled to his confidence already expressed a pressing admonition with authority, and earnestly admonished, prescribed and directed with authority on the subject, if we give to the word *enjoin* its force as explained to us by the standard authorities.

It is said by Perry on Trusts (§ 115), that however strong the language of recommendation or request may be, a trust will not be implied if the testator declares that such is not his intention, as if he declares that the gift shall be " unfettered or unlimited," or if he " recommends but does not enjoin." And again, " the point really to be determined in all these cases is whether, *looking at the whole context of the will*, the testator *intended* to impose an obligation on his legatee to carry his wishes into effect, or whether having expressed his wishes, he intended to leave it to the legatee to act on them or not, *at his discretion*." (1 Perry on Trusts, § 114 ; see, also, 1 Story's Eq. Jur., § 1068 ; 1 Jar. on Wills, 332 ; 2 Redf. on Wills, 415, 421.)

It therefore follows that the intention of the testator, as gathered from the will, was that the grandchild should be provided for by the defendant out of the residuary estate. But it is not necessary to predicate the right of the plaintiff to judgment wholly on the

question of intent, inasmuch as it is thought that the words of the seventh clause are imperative and create a trust in her favor. The word *enjoin*, according to Bouvier (see in Law Dictionary) and authorities cited as to words " enjoin " and " injunction," means " to command," " to require," and this is substantially the sense in which the word is popularly used. As already intimated, therefore, the word " enjoin," in the seventh clause, is regarded as imperative and not precatory, and creates a trust in favor of the plaintiff. This view is sustained by the cases of *Pierson* v. *Garnet* (2 Bro. Ch. Ca., 38); *Harding* v. *Glyn* (1 Atk., 469); *Ware* v. *Mallard* (16 Jur., 492); *Forbes* v. *Ball* (3 Merivale, 437); *Dominick* v. *Sayre* (3 Sandf., 555). The seventh paragraph of the will, therefore, upon proper legal interpretation should be read : " I commit my granddaughter Annie C. Lawrence, child of my daughter Annie, now deceased, to the charge and guardianship of my daughter Sara L. Cooke. I enjoin upon her and command her, as an obligation which I impose in connection with the residuary estate given her, and as a condition of or charge upon such gift, to make such provision for my granddaughter as she may judge to be expedient and conducive to the welfare of such grandchild." The only discretion attaching to the trust was that which related to the manner in which such appropriation should be made.

The conclusion arrived at, therefore, is that the seventh clause, considered with reference to the manifest intention of the testator, meant that provision should be made out of the residuary estate by the defendant for the support of the plaintiff, and that not only was such the intention, but the words employed in the seventhclause, being imperative, created a trust for that purpose, as a burden upon or condition of the enjoyment of the residuary estate, to which it belonged and of which it immediately became a part, the residuary estate and the trust declared being created at the same moment.

The judgment appealed from should therefore be reversed, and judgment rendered for the plaintiff.

DANIELS, J. :

The object of the action was to determine the construction and effect of the will of Chauncey L. Cooke, deceased, so far as the plaintiff claimed to be entitled to be benefited by its provisions.

By the sixth paragraph he gave all the residue of his estate, real and personal, to his daughter Sara L. Cooke, to have and to hold the same to her, her heirs and assigns, forever. He then committed the guardianship of his granddaughter Annie C. Lawrence, the child of his daughter Annie, deceased, to his daughter Sara L. Cooke. After doing that and expressing his confidence in her honesty, good will and integrity he, in express language, enjoined upon her to make provision for the grandchild out of his residuary estate, in such manner, at such times and in such amounts as she might judge to be expedient and conducive to the welfare of the grandchild and her own sense of justice and Christian duty should dictate. It is very clear, under this language, that the testator did, in the first instance, intend to devise and bequeath the residue of his estate to his daughter as the owner thereof, and if that direction had been allowed to remain unqualified, her title, without doubt, would have been of that description. But the testator did not leave it in that condition. He did not, in fact, intend that she should hold and enjoy the title to his estate in this unlimited and unqualified manner. The direction afterwards given by him was imperative and decisive and it was not qualified by the expression of his confidence in the honesty, good will and integrity of his daughter. That expression was made to assign the reason why he committed the guardianship of his granddaughter to his daughter Sara. And it was after commending her in this manner that he again took up the direction deemed to be essential by him for the complete disposition of his estate, and this direction was given in such words as to operate as a qualification and restraint upon the general devise and bequest previously made in favor of his daughter. It was not merely the expression of a wish, or a desire that she should afterwards make some provision for this grandchild out of the residue of the estate, but it was equivalent to the expression of his will or command, that such a provision should be made. He used decisive language for the expression of his intention and enjoined it as a duty upon his daughter to carry this intention into effect. The design was that this grandchild should be provided for in a reasonable and suitable manner out of his property. He was probably at the time incapable of determining what that provision should be, and therefore committed the determination of the sub-

ject to the judgment and good sense of his daughter, rendering it obligatory upon her that she should make the provision, and leaving it only discretionary with her as to the amount of it, and the time and the manner in which it should be made. And in that determination she was to be governed by what should be deemed conducive to the welfare of the grandchild. His intention, by the language made use of, was to reduce and qualify the preceding devise and bequest of the residue of his estate, so far as that might be necessary to create a proper provision for his granddaughter. And the time, manner and amount of it was all that was left to the discretion of his daughter.

And this direction was obligatory upon her under even the more restricted authorities recently arising in the disposition of this class of cases. In *Roseboom* v. *Roseboom* (81 N. Y., 356), it was conceded that an estate given in this manner in one portion of the will might be reduced or abridged by subsequent clauses indicating that to have been the intention of the testator. And *Clarke* v. *Leupp* (88 id., 228), also proceeded as far as this. To give effect to a direction of this description all that is required by the law is that the language employed to express it shall indicate it to have been the intention of the testator that it certainly should be observed and carried into effect.

Upon this subject it has been truly said, that " courts seek for the intention of the parties, however informal or obscure the language may be, and if a trust can fairly be implied from the language used, as the intention of the parties, the intention will be executed through the medium of a trust." (1 Perry on Trusts [2d ed.], § 112.) And a statute of this State has clearly enjoined the same obligation upon the courts (2 R. S. [6th ed.] 1131, § 2).

This subject, as well as the conflicting authorities bearing upon it, was considered in 1 Jarman on Wills (5th Am. ed.), 385–391; where the operative effect of the direction appears to have been submitted by the authorities simply to this test.

In *Broad* v. *Bevan* (1 Russell, 511, note), a very similar direction was held to be sufficient to create a trust in favor of the person designed by the testator to be benefited by it. And the same con clusion was adopted in *Cockrill* v. *Armstrong* (31 Ark., 580). And *Le Marchant* v. *Le Marchant* (18 L. R , Eq., 414), accords with the

same view. *Parsons* v. *Best* (N. Y. Sup. Ct., 1 T. & C., 211) does not conflict with this construction, for the provisions of the will in that case were not made as imperative as they were in this case, and besides that the action was disposed of, in part at least, upon the ground that it could not be maintained during the lifetime of the widow. To reconcile the conflicting authorities bearing upon the consideration of wills containing somewhat similar clauses would be utterly impracticable, and a detailed examination of the cases, therefore, would not be profitable. It is sufficient for the disposition of this case that the evidence is quite clear, afforded by the language of the will, that the testator did not intend to leave his granddaughter subject to the mere choice or volition of his own daughter, but that his design was that some substantial provision should be made for her out of his residuary estate, which was devised and bequeathed by him to his daughter. And that design, expressed as it was by him, it is the duty of the courts to carry into effect. The judgment dismissing the complaint should be reversed, therefore, and judgment directed in favor of the plaintiff.

DAVIS, P. J. (dissenting):

I do not concur in the construction given to the will by my brothers BRADY and DANIELS.

By the sixth clause of the will the testator gave to his daughter Sarah L. Cooke the whole of his residuary estate in fee simple and absolute.

His intent to do this is so manifest by the sixth clause that it is not open to question.

By the seventh clause he intends to put his granddaughter into the care and guardianship of his daughter.

He expresses the utmost confidence in the "honesty, good-will and integrity" of his daughter, and proceeds to "enjoin" upon her the duty of making provisions out of his residuary estate in such manner and at such times and in such amounts as she may judge expedient and conducive to the welfare of such grandchild, and as her own sense of justice and Christian duty shall dictate. The nature and force of this language are not such as to impose upon the absolute estate he had given his daughter any specific trust. On the contrary, it indicates very strongly his intention to con-

fide wholly in the sense of justice and right of his daughter to do what she might think best for the granddaughter, leaving that sense wholly free from legal trammel or constraint.

I think it impossible correctly to construe this language as imposing upon the property itself any charge or trust.

The authorities do not warrant it. The word "enjoin" only operates to indicate the extent to which the testator meant to impress on his daughter's conscience the duty of doing whatever the condition and circumstances of the granddaughter should require; but to leave the duty wholly a moral and not a legal obligation.

I think the judgment must be affirmed.

*Judgment reversed ; judgment ordered for plaintiff.*