PATRICK DELANEY, Respondent, *v.* MARY McCORMACK et al. Appellants.

The will of W. gave all of his real estate to his son J. for life, and in fee in case his son married and had issue. If he died without having had lawful issue the will directed the executor or executors then surviving, to sell said real estate and distribute the proceeds among the testator's " next of kin as personal estate according to the laws of the State of New York, for the distribution of intestate personal estate." The executors named were J. and two others ; at the testator's death he left J., four nieces and a nephew, surviving. J. died without having had lawful issue, the other two executors were then dead, the four nieces also died during the life-time of J. leaving children. In an action brought by the nephew for a construction of the will and the appointment of a trustee to carry out its unexecuted provisions, *held*, that the will created a general power in trust, the execution whereof was imperative (1 R. S. 732, §§ 74, 77; 734, §§ 94, 96); that upon the death of the surviving trustee his powers and duties became vested in the court, and might be exercised by some person appointed by it for that purpose (1 R. S. 734, § 102; id. 730, § 68) ; also that as the gift was money and the direction for conversion absolute, the " next of kin," to whom the proceeds of the real estate were to be distributed, were those who were such at the time of distribution, *i. e.* at the death of J.; and that therefore plaintiff was entitled to all of said proceeds.

(Argued February 21, 1882 ; decided February 28, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made the second Monday of December, 1881, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term. (Reported below, 25 Hun, 574.)

This action was brought to obtain a construction of the will of John Walsh, late of the city of New York, deceased. The clauses of the will as to which there was any controversy are as follows :

" *Thirdly.* I give, devise and bequeath unto my said son James, during his natural life, all the rents, issues and profits of my real estate, and in case he marries and has lawful issue, then and in the last-mentioned event and thereupon I give, de-

vise and bequeath to my said son James all and singular my real estate, whatsoever and wheresoever, to have and to hold, the same to my said son, his heirs and assigns forever.

"*Fourthly.* I desire my executors to keep the buildings on my real estate insured against loss or damage by fire, and in repair, and to pay all taxes, assessments, and other charges thereon, and also the interest on incumbrances by mortgage thereon; and if necessary, they are authorized to receive sufficient of the rents to enable them so to do; and in case of damage or loss by fire, they are to receive the avails of the insurance, and to repair or rebuild; but this clause of my will is only to have effect until my said son James shall have lawful issue; and I also authorize my said executors, until that event, to raise, by mortgage of my real estate or any part thereof, whenever and as often as shall be necessary, a similar amount as is now on mortgage of my said estate, wherewith to discharge the present mortgage if necessary.

"*Fifthly.* In case of the death of my son James without ever having had any lawful issue, I desire my executors who shall then be surviving, or the last survivor, to sell all my real estate, and to distribute the proceeds thereof amongst my next of kin as personal estate, according to the laws of the State of New York for the distribution of intestate personal estate; and for that purpose I authorize my said surviving executors or the last survivor to execute good, valid and sufficient conveyances in the law to transfer said estate and vest the same in the purchaser and purchasers in fee-simple.

"*Lastly.* I appoint my beloved wife and my beloved son James, and my friend Tighe Davey to be the executors of this my last will and testament."

The testator died in 1836 leaving, surviving him, his son James, one nephew, the plaintiff herein, and four nieces. James died in 1880, unmarried, and having had no lawful issue. The two other executors died before him, as did also the four nieces of the testator. The defendants are the children of said nieces.

*John W. Goff* for McCormick *et al.,* appellants. Trust duties cannot depend on a contingency. (*Reed* v. *Van Wart,* 12 Barb. 113.) The .test is that a trustee must have an estate commensurate with the execution of his trust. (*Brewster* v. *Striker,* 2 N. Y. 19; *Leggett* v. *Hunter,* 19 id. 445.) At common law a devise that lands should be sold by executors gave them but a power, and the lands descended to the heirs subject to the power. (4 Kent's Com. 320; *Fountain* v. *Ravenal,* 17 How. [U. S.] 369; '*Doe* v. *Martin,* 4 Term R. 39; *Cunningham* v. *Moody,* 1 Ves. 179; Sugd. on Pow. [5th ed.], chap. 2, § 4, p. 151; *Hilton* v. *Kenworthy,* 3 East, 553; Co. Litt. 236; *Bergen* v. *Bergen,* 1 Caine's Cas. in Eq. 15; *Baldwin* v. *McComb,* 1 Hill, 111; *Jackson* v. *Potter,* 4 Wend. 672; *Meakings* v. *Cromwell,* 5 N. Y. 130; Williams on Executors, 579; 2 Wash. Real Prop. 548; 2 Cruise's Digest, 326; *Reed* v. *Van Wart,* 12 Barb. 113; *Boynton* v. *Hoyt,* 1 Denio, 53; *Quinn* v. *Skinner,* 43 N. Y. 99; *Tucker* v. *Tucker,* 5 id. 408.) The power contained in the will is a naked one and collateral to the land. (Sugd. on Pow. 106; Fletcher on Trusts, 13; 4 Kent's Com. 356, 357, 361; 2 Jarman on Wills [Perk. ed.], 206; *Jackson* v. *Schauber,* 7 Cow. 187; *Fay* v. *Fay,* 1 Cush. 93; *Gray* v. *Lynch,* 8 Gill, 403; Powell on Devises, 292–3; 1 Sugd. on Pow. 45; 2 Hill, 573; Fletcher on Trusts, 11; 2 Bradf. 107; 2 Wash. Real Prop. 437.) The power being naked, personal, and exercisable only on a contingency, became extinguished on the death of the donees, and the court had no jurisdiction or authority to appoint a trustee to execute the power. (2 R. S., art. 2, chap. 1, on Uses and Trusts, §§ 68, 69, 70, 71, 72; art. 3, §§ 96, 100, 101, 103, 112, 131, 132; *Crawey* v. *Cohnan,* 9 Ves. 323; 1 Sugd. on Pow. 147; 1 Chance on Pow. 378; *Coles* v. *Wackle,* 16 Ves. 142; *Dominick* v. *Michael,* 4 Sandf. Ch. 376; *Judson* v. *Gibbons,* 5 Wend. 225; *Downing* v. *Ocean Nat. Bank,* 65 N. Y. 497; *Larned* v. *Bridge,* 17 Pick. 339; 24 Alb. Law Jour., Sept. 3, No. 10, p. 197; *Arundel* v. *Phillpot,* 2 Vern. 69; *Tompkyn* v. *Sandys,* 2 P. Wms. 222; *Ray* v. *Adams,* 3 M. & K. Ch. 237; *Catton* v. *Taylor,* 42 Barb. 578.) The next of kin living at the death of the testator took

a vested interest in the bequests of the proceeds of the lands. (Dayton on Surr. 421; Wms. on Exrs. 797–1083; Willard's Eq. 516; *Livingston* v. *Green*, 52 N. Y. 118.) The gift to the next of kin was absolute, and the event on which the payment was to be made was a condition subsequent. (*M'Lean* v. *Freeman*, 70 N. Y. 81; *Downing* v. *Marshall*, 23 id. 366.) A gift over of a legacy on a contingency does not prevent the vesting, but can operate to divest it upon the happening of the precise contingency specified; such limitations are conditions subsequent. (*Weyman* v. *Ringold*, 1 Bradf. N. Y. Surr. 40; *Barker* v. *Woods*, 1 Sandf. Ch. 129.) The representatives of those who were named and who were living at the death of the testator are entitled to take on the happening of the contingency, by representation equally with the survivors of the original persons or class. (*Williams* v. *Conrad*, 30 Barb. 524; *M'Lean* v. *Freeman*, 70 N. Y. 81; *Fisher* v. *Banter*, 66 id. 468.) By next of kin is meant not nearest of kin, but all those answering that description at the time the expression is used where testator refers to the statute of distributions. (*Garrick* v. *Lord Camden*, 14 Ves. Jr. 372; *Elunsley* v. *Young*, 2 M. & K. 82, 871.) The distribution in the eye of the law is to be made as if on the death of the testator. (*Fletcher* v. *Ashburner*, 1 Barb. Ch. 497; *Stagg* v. *Jackson*, 1 Comst. 206.)

*Luke F. Cozans* and *J. Woolsey Shephard* for Walker *et al.*, appellants. As used in the will the words "next of kin" refer to the persons bearing that relation to the testator at the time of his death, manifestly excluding his son James. (*Keteltas* v. *Keteltas*, 72 N. Y. 312, 315; *Campbell* v. *Rawdon*, 18 id. 412; 2 Jarman on Wills [5th Am. Bigelow's ed.], 129, foot paging; 2 Redfield on Wills [3d ed. 89]; 2 Wms. on Exrs. [6th Am. ed. Perkins], 1211.) The living next of kin of testator at the time of his death took an estate in expectancy, which was a vested and alienable interest in the distributive shares, which they themselves, if alive, or their representatives, in case of their death, are now entitled to receive. (2 R.

S. [6th ed.] 1103, § 35 ; *Myers' Will*, 6 Abb. N. C. 438 ; *Ellis* v. *Lynch*, 8 Bosw. 480 ; *Savage* v. *Pike*, 45 Barb. 464 ; *Beach* v. *Hollister*, 3 Hun, 519 ; *Smiley* v. *Bailey*, 59 Barb. 80 ; Willard on Real Estate, 173 ; *Leslie* v. *Marshall*, 31 Barb. 560 ; *Foley* v. *Foley*, 17 Hun, 235 ; *Hennesey* v. *Paterson*, 12 N. Y. Week. Dig. 342 ; 1 Jarman on Wills [5th Am. Bigelow's ed.] ; 841, 860 ; *Stevens* v. *Leslie*, 70 N. Y. 512 ; *Monarque* v. *Monarque*, 80 id. 320 ; *In re Estate George Dominick*, 2 Brad. 179 ; *Sweet, Adm'r*, v. *Chase*, 2 N. Y. 73 ; *Manice* v. *Manice*, 43 id. 303, 368 ; *In re Estate Pinckney*, 1 Brad. 269 ; *Tucker* v. *Bishop*, 16 N. Y. 402 ; *Rome* v. *Phillips*, 24 id. 463.) The law favors vested estates, and no remainder will be construed to be contingent which may consistently with the intention be deemed vested. (4 Kent's Com. 203, 262 [12th ed. Holmes] ; *Loder* v. *Hatfield*, 4 Hun, 36 ; *Moore* v. *Lyons*, 25 Wend. 119 ; *Dunshee* v. *Goldbacker*, 8 Abb. [N. S.] 439 ; *Livingston* v. *Greene*, 52 N. Y. 118 ; *Moore* v. *Little*, 41 id. 84 ; *Dubois* v. *Ray*, 35 id. 168.) The direction to sell and convert into cash in no way affects the vested interest of such next of kin, and the proceeds derived from the sale of said real estate is still stamped with that interest and ownership. (1 Wms. on Exrs. [ Am. ed. Perkins], 725.) Limitations of future or contingent interests in personal property are subject to the same rules as those prescribed for real estate. (2 R. S. [6th ed.], part 2, chap. 4, title 4, p. 1167.) The next of kin of testator living at the time of his death took a contingent remainder under the will, which vested on testator's death, and on the death of James Walsh without having had lawful issue, the said next of kin, or their representatives, if dead, were entitled to the property or its proceeds. (*Hennesey* v. *Paterson*, 12 N. Y Week. Dig. 342.)

*John R. Kuhn* for respondent. The testator did not intend to include his son James in the next of kin referred to in the will. (*Savage* v. *Burnham*, 17 N. Y. 574.) Where the only gift in a will is in the direction to pay or distribute at a future time, the case is not to be ranked with those in which

payment or distribution only is deferred, but is one in which time is of the essence of the gift. (*Locke* v. *Lamb*, L. R., 4 Eq. Cas. 375; *Leake* v. *Robinson*, 2 Merrivale, 387; *Smith* v. *Edwards*, 23 Hun, 228; 1 Redfield on Wills, 393, sub-sec. 21; 2 Jarman·on Wills [Randolph & Talcott's ed.], 457.)

FINCH, J. The testator gave to his son James the whole of his real estate for life, and absolutely and in fee, in case the son married and had issue; but if he died without having had lawful issue, the testator directed his executors who should then be surviving, or the last survivor of them, to sell his real estate and distribute the proceeds among the testator's "next of kin, as personal estate, according to the laws of the State of New York, for the distribution of intestate personal estate." The executors named were the testator's wife, his son James, and his friend, Tighe Davey; all of whom are dead. James died without having had lawful issue. At testator's death his next of kin were his son James, four nieces, and a nephew, who is the present plaintiff. The four nieces died during the life-time of James, but leaving children who are defendants here, and claim an interest in the proceeds of the real estate, or in the real estate itself. At the date of the death of James, the plaintiff was the sole next of ·kin of the testator, and claiming the entire proceeds of the real estate, brought an action for a construction of the will and the appointment of a trustee to carry out its unexecuted provisions. The trial court determined that it had jurisdiction to appoint a trustee, and made such appointment, and that the plaintiff was entitled to the entire proceeds of the real estate after payment of the liens thereon. That judgment was affirmed, and the children of two of the nieces bring this appeal.

It is contended in their behalf, that the devise to James, before marriage and the birth of issue, was but a life estate; that the remainder in fee vested at the death of testator in his heirs at law; that the four nieces and plaintiff took such remainder in fee as tenants in common, subject to be divested by the marriage of James and birth of lawful issue; that this contin-

gency not having occurred the fee was not divested; and that it cannot be divested by a sale of the real estate and disposition of the proceeds as personalty because the power of sale given to the executors was a mere naked power, not coupled with any interest; died with the donees to whom it was given; and cannot be executed by a court of equity.

It might prove to be the better opinion that James took a base, or determinable fee, subject to be divested upon his death without having had lawful issue, so that during his life there was no fragment of the estate to descend upon his heirs at law, but the character of his interest need not be particularly discussed if the power of sale survived the death of the executors, and the real estate is to be distributed as personalty. That is the vital point in the case, and the appellant's view of it is sought to be sustained by a reference to the rule at common law, which, it is said, the Revised Statutes have not seriously changed, but have omitted any provision, express or implied, which gives the court authority to appoint a trustee to execute a naked power. The argument turns in the end upon the single inquiry whether the authority given to the executors to sell is a mere naked power, or a power in trust and its execution imperative. The statutory provisions must control and determine the result, and render unnecessary any discussion or examination of the cases previously decided, which were not always harmonious and in some instances not easily reconciled. They were very ably and patiently examined in *Dominick* v. *Sayre* (3 Sandf. 555), resulting in a general conclusion that the statutory revision substantially followed and adopted the rules of the common law, departing from them only to remove doubts and secure greater accuracy and precision. But in any event the statutes must furnish the rule by which we are to be guided to a conclusion, for they begin with a comprehensive provision abolishing all powers as then existing by law, and making their creation, construction and execution to be governed by the succeeding enactments. (1 R. S., part 2, chap. 1, title 2, art. 3, § 73.) A power is then defined to be "an authority to do some act in relation to lands, or the creation of estates therein, or of

charges thereon, which the owner granting or reserving such power might himself lawfully perform." (§ 74.) The authority here given to the executors of John Walsh to sell the lands and distribute the proceeds in the event of the death of James without having had issue was clearly a power within the statutory definition. It was also a general and not a special power, for the former exists where the authority permits the alienation in fee by means of a conveyance, will or charge of the lands embraced in the power to any alienee whatever (§ 77), and the latter when the alienation must be to designated persons, or of a less estate or interest than a fee. (§ 78.) A distinction is then drawn between cases in which no persons other than the grantee of the power have any interest in its execution, in which case the power, whether general or special, is denominated beneficial (§ 79), and cases in which the grantee has no interest in its execution but holds it for the benefit of others. A general power is in trust " when any person or class of persons, other than the grantee of such power, is designated as entitled to the proceeds, or any portion of the proceeds, or other benefits to result from the alienation of the lands according to the power." Within this definition, the general power conferred upon the executors to sell the lands and distribute the proceeds to testator's next of kin was a power in trust, in the execution of which the grantees had no interest, for, although James was one of them, the power, by its terms, was to be exercised upon his death, and in an event which left him without any interest in its execution. These statutory definitions seem to us entirely accurate and clear and scarcely need, at least for present purposes, the " authoritative exposition " invoked. A power to be exercised by the grantee, not at all for his own benefit but wholly and entirely for the benefit of some other person or class of persons, is necessarily exercised by such grantee in a trust capacity. The element of trust inheres in its substance and is its essential and vital characteristic. The statutes then provide that every trust power shall be imperative, and impose a duty upon the grantee, the performance of which may be compelled in equity, unless in a case where its execution or

non-execution is made expressly to depend upon the will of the grantee, and does not cease to be such even though he may have the right to select some and exclude others from among the objects of the trust. (§§ 96, 97.) So far, it is determined for us, that the authority granted to the executors of John Walsh is a general power in trust, and imperative. Being such, a further provision, reaching the emergency of the death of the grantees, becomes applicable. It is enacted (§ 102) that the provisions of sections 66 to 71 of article 2, relating to express trusts, shall apply to powers in trust, and section 68 of that article confers upon the court, upon the death of the surviving trustee, his powers and duties, and permits them to be exercised by some person appointed for that purpose under the direction of the court. The statutes, therefore, answer the whole argument of the appellants. The power in trust conferred upon the executors did not die with them, but survived and vested in the courts of equity having full power to compel the execution of the trust. If in *Catton* v. *Taylor* (42 Barb. 578) there is any thing to the contrary, which seems to be the fact, it was decided without reference to the statutes and does not alter or modify our conclusion. The power in this case was general, in trust and imperative. It was not of a character personal to the trustees as involving the exercise of their individual choice and discretion, and might as well be executed by persons other than themselves. Probably it would have survived before the Revised Statutes, but certainly remains and is enforceable since.

Assuming, then, the validity of the trust power and the jurisdiction of equity to provide for its exercise, the appellants still contend that the " next of kin," to whom the proceeds of the real estate were to be distributed, are the persons, or their representatives, who were such at the date of the death of the testator, and not those who were such at the date of the death of James. There is no question here of the suspension of the power of alienation, for the sale and distribution awaited only the termination of a single life ; but, nevertheless, the argument of the appellants proceeds, and must, necessarily, proceed, upon

·the idea that the next of kin of the testator at his death took vested interests in a legacy, payable in the future, since otherwise the right of each would lapse and nothing would pass to their representatives. But there is no gift to the next of kin, and no language importing such gift, except in the direction to convert the real estate into money and then make distribution; and in such case the rule is settled that time is annexed to the substance of the gift and the vesting is postponed. Much more is that true where the gift is only to vest upon the happening of a future contingency, until the occurrence of which it is uncertain whether a gift will be made at all. ( *Warner* v. *Durant*, 76 N. Y. 136; *Leake* v. *Robinson*, 2 Merr. 387; *Smith* v. *Edwards*, MSS. Feb. 1882.)* Here a future condition or contingency attached to the substance of the gift. It was conditioned upon the death of James without having had lawful issue, so that the vesting was plainly postponed and the gift was future. There is the further and important fact that at the death of James the land was to be converted into personalty and be distributed as such, and the very subject of the gift was not to come into existence until the prescribed contingency. ( *Vincent* v. *Newhouse*, 83 N. Y. 511; *Hoghton* v. *Whitgreave*, 1 Jac. & Walker's Ch. 145.) The case, therefore, falls within the rule that where the gift is money, and the direction for the conversion absolute, the legacy given to a class of persons vests in those who answer the description and are capable of taking at the time of distribution. ( *Teed* v. *Morton*, 60 N. Y. 506.) Adding to these considerations the incongruity of a construction which would include James himself among the next of kin in the testator's mind and intention, we are entirely clear that the courts below correctly decided that the next of kin entitled were those who answered that description at the date of the distribution. We discover, therefore, no error in the disposition of the case.

The judgment should be affirmed, with costs

All concur.

Judgment affirmed.

See *ante*, p. 92.