PHILIP H. SAGE and IDA M. SAGE, Appellants, *v.* EMILY E. WHEELER and Others, Respondents.

*Will — estate in remainder, when vested — possession only postponed.*

In an action brought for the partition of certain lands devised by Philip P. Harter, it appeared that he left a will, by the fifth clause of which he devised certain lands to his son, George H. W. Harter, for the term of his natural life " if he dies without leaving children, and then to be equally divided among my grandchildren, including the children of my adopted daughter, Jane Bedell, share and share alike, but if the said George H. W. should leave a child or children then to be his and theirs forever, subject to the conditions hereinafter mentioned." The testator died in July, 1876, and his son George died without issue in May, 1894, and in the intermediate period two of the testator's grandchildren died intestate, unmarried and without issue. The question was whether these two grandchildren took a vested interest at the death of the testator.

*Held*, that the will should be so construed as if possible to avoid the disinheritance of remaindermen who had died before the termination of the precedent estate;

That the testator intended to keep the property in the line of his blood, and that the right to the estate vested in the grandchildren upon the death of the testator, while possession was postponed until the death of George H. W. Harter without issue;

That the persons to whom the remainder was limited were ascertained, the event upon which the remainder would go into effect was certain, and the remainder, therefore, was vested;

That the words of the will, " then to be equally divided among my grandchildren," were used merely to indicate the time when the right of possession should begin, namely, at the close of the antecedent life estate.

APPEAL by the plaintiffs, Philip H. Sage and another, from an interlocutory judgment of the Supreme Court in favor of the

defendants, entered in the office of the clerk of the county of Lewis on the 28th day of September, 1895, upon the decision of the court rendered after a trial at the Onondaga Special Term.

The action was brought to partition certain lands situated in Lewis county described in the complaint, and for a sale of the same in case actual partition could not be had without material injury to the interests of the parties. Issues of fact were brought to trial at a Special Term held in Lewis county in April, 1895, and findings of fact and conclusions of law were made, and exceptions thereto were served, and a judgment was entered upon the findings appointing a referee, and directing a sale of the premises and distribution of the proceeds in accordance with the findings. Among the conclusions of law, the trial court found as follows : "*Second.* That under the will of said Philip P. Harter, deceased, there was no gift of the premises mentioned in the first finding of fact to the grandchildren of said testator until the death of George H. W. Harter without leaving children, and the title to said premises did not vest in the said grandchildren until the death of said George H. W. Harter."

Philip P. Harter died in July, 1876, having theretofore in October, 1872, made his last will and testament, which was admitted to probate in the county of Lewis. His son George died in May, 1894, leaving no child or children. At the time of the death of the testator, he left him surviving fourteen grandchildren, two of whom "died intestate, unmarried and childless before the death of the said George." The question in the case depends upon the construction to be given to the fifth clause of the will, which is as follows :

"*Fifth.* I give and devise to my son, George H. W., those several pieces of land conveyed to me by Isaac Bostwick, sixty-nine acres ; Asa D. Wright, sixteen acres ; Palmer Hodge, forty-seven acres ; Mrs. Copley and Mrs. White and her heirs, amounting in all to about one hundred and fifty acres, and the Wm. Vroman lot, twenty-five acres, the Abner Townsend lot of twenty-five acres with the appurtenances, to have and to hold the same during the term of his natural life if he dies without leaving children, and then to be equally divided among my grandchildren including the children of my adopted daughter, Jane Bedell, share and share alike, but if the said George H. W. should leave a child or children, then to be his and theirs forever, subject to the conditions hereinafter mentioned."

The will appointed Gilbert B. Johnson sole executor, "empowering him to sell and convey all property necessary as herein directed, real as well as personal." It is not claimed that he had any power over the lands mentioned in the fifth clause of the testator's will.

*John Lansing*, for the appellants.

*H. H. Ryel* and *C. S. Mereness*, for the respondents.

HARDIN, P. J.:

To determine the question presented by this appeal it is important to ascertain the intention of the testator in the use of the language found in the fifth clause of his will.

By the provisions of the Revised Statutes (Vol. 1, p. 722) it is provided in section 7, viz.: "Estates, as respects the time of their enjoyment, are divided into estates in possession and estates in expectancy.

"§ 8. An estate in possession is where the owner has an immediate right to the possession of the land. An estate in expectancy is where the right to the possession is postponed to a future period."

Section 35 provides: "Expectant estates are descendible, devisable and alienable in the same manner as estates in possession." (1 R. S. 725.)

Manifestly the testator intended to give and devise to his son George the lands mentioned in the fifth clause of the will, "to have and to hold the same during the term of his natural life;" and it is equally clear by the language used that the testator intended that in case George left him surviving child or children, the lands should descend to such child or children. At the close of the life of George his life estate terminated. George died without leaving child or children, and, therefore, that clause of the will became wholly inoperative and inefficient. We must turn to the other language of the will in order to determine from it the intention of the testator as to the disposition to be made of his estate in the event mentioned therein. A construction is to be preferred which will give meaning to all the language used by the testator, and, also, that shall avoid the disinheritance of remaindermen who may happen to die before the termination of the precedent estate. (*Moore* v. *Lyons*, 25 Wend. 119; *Scott* v. *Guernsey*, 48 N. Y. 106; *Byrnes* v. *Stilwell*, 103 id. 453.)

The testator evidently intended, by the use of the language above referred to, that his son George was to remain in possession of the lands during his natural life, and that in the event that he should die without leaving issue, a division should, in that case, take place among the testator's grandchildren, "including the children of my (his) adopted daughter, Jane Bedell."

In the use of the words "and then to be equally divided among my grandchildren," there was evidently an intention that the right to possession of the land in the grandchildren was then to pass to them simultaneously with the death of George in the event that he died childless. The estate vested in them as a right upon the death of the testator, and upon the death of George without issue they became entitled to possession. It is quite apparent that the testator intended to keep the property in the line of his blood.

We think the language of the whole of the fifth clause when taken together falls within the principle of *Hennessy* v. *Patterson* (85 N. Y. 104), and that the language used by FINCH, J., in that case is applicable here. "When the person to whom a remainder after a life estate is limited is ascertained and the event upon which it is to take effect is certain to happen, the remainder is vested." And in accordance with the doctrine of that case we are inclined to think the remainder which vested in the grandchildren was contingent "but nevertheless an expectant estate, as defined by the Revised Statutes, and as such alienable;" and that the interest which the two grandchildren derived, at the time of their death descended to their heirs and vested in the other grandchildren.

In *Mitchell* v. *Knapp* (54 Hun, 500) it was held that in order to defeat the vesting of a bequest or devise, a very clear intention should be shown. That case was affirmed in 124 N. Y. 654 on the opinion delivered at the General Term.

In 1 Revised Statutes, 723, section 13, it was provided, viz.: "Future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate."

It is quite manifest that the testator, in the use of the words "then to be equally divided" intended to indicate the time when the right

of possession should begin, to wit, at the close of the antecedent life estate. (*Vanderzee* v. *Slingerland*, 103 N. Y. 47; *Van Axte* v. *Fisher*, 117 id. 401; *Bedell* v. *Guyon*, 12 Hun, 396; *Wilson* v. *White*, 109 N. Y. 59; *Embury* v. *Sheldon*, 68 id. 235.)

The respondents have placed considerable reliance, as did the trial judge, upon *Shipman* v. *Rollins* (98 N. Y. 311). In that case the testator by his will provided that his executors should sell certain of his real estate, and provide a fund to be invested so as to produce a specified annuity, to be paid to his widow during life, and after her death he authorized the executors to sell the residue of the estate and add the proceeds to the amount invested, and after paying therefrom certain items specified, he directed that the balance be then divided into eight parts, four of which he gave to certain religious associations not then incorporated. A more careful inspection of the case warrants the criticism made of it in *Mitchell* v. *Knapp* (54 Hun, 503), where it was said "In *Shipman* v. *Rollins* (98 N. Y. 311) there was a manifest intent to postpone the vesting, and so it was in *Delafield* v. *Shipman* (103 N. Y. 463)." We think the case, when fully examined, fails to sustain the position for which it was cited in the opinion delivered at Special Term.

The case of *Smith* v. *Edwards* (88 N. Y. 92) differs very essentially from the one now in hand. In that case the testator named executors and directed that they keep invested a certain sum until his youngest grandchild "now born, or that may hereafter be born before final distribution of my estate, shall be of full and lawful age;" and then, by a subsequent clause he fixed the date of the final distribution; and it was held that the whole bequest was invalid because it suspended the absolute ownership for more than two lives in being at the death of the testator. We think the case does not aid the contention of the respondents.

The case of *Warner* v. *Durant* (76 N. Y. 133) differs very essentially from the one now in hand. There the testator provided that his gift was to be severed from the general estate and be held by the trustees for a specified time for the benefit of the legatee, and then to be paid over to him; in the meantime the interest thereof to be paid to him. It was held that this was indicative of the intent of the testator that the legatee should, at all events, have the principal, and was to wait only for the payment until the day fixed. It was

held, however, in that case that the legacy vested in the legatee immediately upon the death of the testator and passed to his personal representatives. We see nothing in the case which sustains the contention of the respondents.

The foregoing views lead to the conclusion that the learned trial court was in error in finding as a conclusion of law that the "title to said premises did not vest in the said grandchildren until the death of said George H. W. Harter," as we are of the opinion that the grandchildren, upon the death of the testator, took a vested interest in the lands mentioned in the complaint.

It is suggested in behalf of the appellants that an original judgment may be entered upon the evidence found in the appeal book. There are several contingencies, however, which will be affected by the result which we have reached, and we deem it more orderly that the interlocutory judgment should be reversed, and the case remitted to the Special Term for further action in accordance with the views expressed in the foregoing opinion.

All concurred.

Interlocutory judgment reversed, and a new trial ordered, with costs of the appeal to abide the final award of costs.