JAMES W. WADSWORTH, Individually and as Trustee under the Last Will and Testament of JAMES WADSWORTH, Deceased, Respondent, *v.* CHARLES JAMES MURRAY and Others, Appellants, Impleaded with WILLIAM A. WADSWORTH and Others, Respondents.

*Will — estate in remainder — time of vesting.*

A testator devised certain property in trust for the benefit of one Martin Brimmer, Jr., until he should arrive at the age of twenty-one years, and further provided, " and in case the said Martin Brimmer, Junior, shall die leaving no lawful issue him surviving, then, and in that case, the estate in said lands and the entire and absolute estate and interest in such accumulations shall descend to, and vest in, my heirs at law, in the same manner that it would have descended to, and vested in, them, if this will had not been made, and the said Martin Brimmer, Junior, had died without issue before my decease."

*Held,* that the estate so given, in case of the death of Martin Brimmer, Jr., without issue, vested in the heirs at law of the testator, who were such at the time of his death.

APPEAL by the defendants, Charles James Murray and others, from portions of a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Livingston on the 3d day of June, 1897, upon the decision of the court rendered after a trial at the Monroe Special Term.

This action was instituted to obtain a construction of the will of James Wadsworth who died in 1844, and for the final settlement of the accounts of certain trustees appointed by the said will.

James Wadsworth was a resident of Livingston county and the owner of lands in the counties of Allegany, Genesee, Livingston, Monroe, Ontario and Onondaga. In November, 1843, he made his last will and testament which was admitted to probate September 9, 1844. He left surviving him two sons, James S. Wadsworth, better known as General Wadsworth (who was killed in 1864 at the battle of the Wilderness in the war of the Rebellion), and William W. Wadsworth and a daughter Elizabeth and a grandson Martin Brimmer, Jr., the son of a deceased daughter Harriet, his only heirs at law. Elizabeth, in December, 1850, intermarried with Charles Augustus Murray, a British subject, and on the 29th of November, 1851, she gave birth to the appellant Charles James Murray, the only issue of such marriage, and on the 8th day of December, 1851,

she died intestate. Charles James Murray was born a British subject, and has continued to be such and an alien up to the present time. Martin Brimmer, Jr., was an infant at the time of the death of James Wadsworth. Brimmer died in 1896, never having had at any time any lawful issue, leaving a last will and testament, in which he appointed the defendant William S. Dexter as his sole executor, and in which he devised certain real estate lying in the town of Beverly, in the State of Massachusetts, to his wife (who survived him), her heirs and assigns, and devised all the residue of his real estate to trustees, who were to pay the net income thereof to his wife during her life, and making further disposition of the property upon the death of the wife. The will of James Wadsworth contained what was called in the case "The Brimmer Trust," whereby trustees were appointed for the said Martin Brimmer, Jr., of certain lands and premises and the proceeds thereof (the nature of which will more particularly appear hereafter), and which is the subject of this litigation.

The value of the property embraced in this trust at the commencement of this action involved securities amounting to $350,000, together with land contracts and certain real estate of great value.

The disability of Charles James Murray, as an alien to take property by devise, was removed by statutes of this State after the death of James Wadsworth and before the death of Martin Brimmer, Jr.

James S. Wadsworth left a last will and testament, in which he disposed of his property, and the appeals herein of all the defendants, except Charles James Murray, involve principally questions arising under certain provisions of that will.

Further facts appear in the opinion of the court.

*Joseph H. Choate, Herbert J. Bickford* and *William V. Rowe,* for the appellant Charles James Murray.

*John G. Milburn,* for the respondent William A. Wadsworth.

*Edward P. Coyne,* for the appellants James W. Wadsworth and others, trustees, etc.

*George W. Wickersham* and *John L. Cadwalader,* for the executor and trustees under the will of Martin Brimmer.

*J. B. Adams,* for appellants Charles F. and Mary W. Wadsworth.

*James Breck Perkins,* for Herbert Wadsworth, respondent.

*John R. Strang,* for the administrator and heirs at law of Craig W. Wadsworth, deceased, and for John R. Strang and others, trustees under the will of James S. Wadsworth.

WARD, J.:

The will of James Wadsworth devised to his two sons, James S. and William W., all the land and real estate of which he should die seized in the towns of Geneseo and Avon, in the county of Livingston, except what should thereafter be specifically devised, one-half to be held by each devisee during his natural life, and if he should die leaving lawful issue, such issue to take an estate in fee, but in case of dying without issue, the surviving brother was to take the fee therein, with power of sale, during their lives, as the joint act of the two sons. He then devised to each of his sons one-fourth of all other lands held by him, in fee, not specifically devised therein. He then devised unto Martin Brimmer, and to his (the testator's) two sons, another fourth of all said real estate outside of the towns of Geneseo and Avon aforesaid, as trustees for his daughter Elizabeth, to have, hold and dispose of for the benefit of Elizabeth, in the same manner as hereinafter stated as to the devise for the benefit of Martin Brimmer, Jr.; and if Elizabeth left issue her surviving, such issue should take an estate in fee in the real estate thereby devised to trustees; but in case Elizabeth should die without issue, then the same provision was made as to the descent and the vesting of the estate in the heirs at law as was made in the case of Martin Brimmer.

And the will further provided, as follows:

"I give and devise unto the said Martin Brimmer, James S. Wadsworth and William W. Wadsworth one other fourth part of all the real estate I may have at the time of my death, not hereinbefore or hereinafter specifically devised, wheresoever situated, as trustees of my grandson Martin Brimmer, Junior, to have and to hold the same as such trustees as aforesaid to them and to their successors in office so long as the said Martin Brimmer, Junior, shall live, *in trust*

to receive the rents, profits and income thereof until the said Martin Brimmer, Junior, shall attain the age of twenty-one years (if he shall so long live), and to invest such rents, profits and income in the same manner that they are hereinbefore authorized to invest the proceeds of real estate devised to them in trust for my daughter Elizabeth, and to hold the same upon like trusts but for the benefit, nevertheless, and as trustees of the said Martin Brimmer, Junior, and after the said Martin Brimmer, Junior, shall arrive at the age of twenty-one years, they shall annually pay to the said Martin Brimmer, Junior, the rents, profits and income of the lands herein devised to them in trust for him, and the rents, profits and income of all accumulations thereof before he shall arrive at the age of twenty-one years. And in case the said Martin Brimmer, Junior, shall die, leaving lawful issue him surviving, such issue shall take an estate in fee in the real estate hereby devised in trust for him, and the entire and absolute estate and interest in such accumulations as are hereinbefore provided for.    And in case the said Martin Brimmer, Junior, shall die leaving no lawful issue him surviving, then and in that case the estate in said lands and the entire and absolute estate and interest in such accumulations shall descend to and vest in my heirs at law in the same manner that it would have descended to, and vested in them if this will had not been made, and the said Martin Brimmer, Junior, had died without issue before my decease."

The will further authorized the trustee to sell all or any part of this real estate, and to invest the proceeds for the benefit of the *cestui que trust;* and it also bequeathed to the trustee one-fourth of all the personal property that the testator should have at the time of his death not otherwise bequeathed, to receive the income and profits, and pay the same annually to Martin Brimmer for the benefit of his son Martin Brimmer, Jr., until he should attain the age of twenty-one years, if he should live so long ; and when Martin Brimmer, Jr., should arrive at the age of twenty-one years the estate and interest in the personal property thus bequeathed in trust should vest absolutely in the said Martin Brimmer, Jr., and the trust thereby created, so far as the same related to such personal property, should end.

The trial court, in construing the provisions of the will above quoted, held : " That a remainder estate was therein and thereby created in favor of the heirs of the testator living at the time of his

death in equal shares, excluding the said Martin Brimmer, Jr., to wit: William W. Wadsworth, James S. Wadsworth and Elizabeth Wadsworth (afterwards Elizabeth Murray), which remainder estate so therein and thereby devised to them vested in possession upon the death of Martin Brimmer, Jr., leaving no lawful issue him surviving." And, also, that the same direction should be given to the proceeds of land sold by virtue of the power of sale contained in the will to be disposed of in the same manner that the lands would have descended and been disposed of if they had not been sold.

And further held: " That the remainder estate in the said lands of said Elizabeth Murray descended upon her death to her brothers James S. Wadsworth (and William W. Wadsworth), and her nephew Martin Brimmer, Jr., in equal shares as her heirs at law, and not to the defendant Charles James Murray by reason of his alienage."

With this conclusion of the trial court all of the parties to this action are content, except the appellant Murray, and the position of his learned counsel is that the remainder in question is contingent; that whether it be contingent or not, in any event, the heirs at law, the class to take, are determinable only on Martin Brimmer, Jr.'s, death, and include only those of the class in existence at that time, so that their surviving that event becomes absolutely essential in order that they may share in the distribution of the trust property ; that Murray became on Brimmer's death one of that class (heirs at law of the testator), and so took by devise under the will. It would thus be unnecessary for him to trace his title by descent through his mother, and under the statutes of this State, he, though an alien, would be entitled to take under such a devise.

And the counsel seeks to fortify this position by urging the following considerations :

That the will should not be so construed as to disinherit Murray, a lineal descendant of the testator.

That upon the face of the will it is clear that the testator intended to exclude Brimmer personally, and all claiming through him who should not be of the blood of the testator, from any participation in the actual division of the real estate held in trust for Brimmer's benefit upon the falling in of the remainder.

That while conceding the general rule that upon a gift or devise

to heirs or to heirs at law, those heirs are to be ascertained as of the time of the death of the testator, this case is taken out of the general rule by the language of the devise itself, which provides that " in case the said Martin Brimmer, Junior, shall die leaving no lawful issue him surviving, *then, and in that case,* the estate in said lands, and the entire and absolute estate and interest in such accumulations shall descend to, and vest in, my heirs."

That as the testator has excluded one of his heirs at law, Brimmer, the remaining heirs take larger and different interests than they would have taken in case of intestacy, and thus a class is created which makes an exception to the general rule.

That the word " heirs " in this devise is not used in an ordinary or narrow sense, but applies to all persons who would take as heirs at law of the testator upon the death of Brimmer.

The position of the other parties to this controversy is indicated by the conclusions of the trial court above stated.

But, to be more specific, they claim that the will creates an equitable estate during the life of Martin Brimmer, Jr., with the remainder over at his death to his issue then surviving, if any, and in default of such issue then to the testator's heirs at law in existence at the time of the testator's death " in the same manner that it would have descended to and vested in them if this will had not been made and the said Martin Brimmer, Junior, had died without issue before my decease." (Quoting from the will.)

That there are two views that may be taken of the future estate thus created in favor of the heirs of the testator. One is, that the estate of the heirs was a vested remainder subject to be defeated by the death of Martin Brimmer, Jr., leaving issue him surviving, and the other is that it was a remainder contingent on the death of Martin Brimmer, Jr., without issue.

That it is not important to determine which of these two estates it was because both were transmissible estates; that a vested remainder is, of course, a transmissible estate. A contingent remainder is also a transmissible estate when the takers are ascertained and the contingency relates only to the collateral event, upon the happening of which the vesting in estate depends.

The precise character of this remainder is not fully discussed or defined by the learned counsel who have argued this case, and per-

haps it is not necessary for the court to attempt to do so. It may, however, be conceded that whatever the estate in remainder may be, whether it has all the attributes of a vested remainder, or such elements of uncertainty as may make it contingent, the property embraced in the remainder is transmissible whether it goes under the will to the heirs of the testator upon his death or to the heirs that may be in existence at the remote period of the death of Martin Brimmer, Jr., more than fifty years after the probate of the will of James Wadsworth.

Coke on Littleton (49a) (Thomas ed. vol. 2, p. 148) says : " The remainder is a residue of an estate in land depending upon a particular estate and created together with the same."

Volume 1, part 2, chapter 1, title 2, section 13, page 723, of the Revised Statutes provides that " future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate. They are contingent whilst the person to whom, or the event upon which, they are limited to take effect remains uncertain."

From this definition it would seem that as the time of the termination of the life estate of Brimmer was uncertain, if the persons in whom the remainder vested could not be ascertained upon the death of the testator, but could only be such as would be in existence at the death of Brimmer, Jr., the remainder would be contingent, otherwise vested. So, in determining whether the remainder is vested or contingent, if that should be necessary in the disposition of this case, we are remitted to the pivotal question whether the remainder descended to the heirs of the testator, who could take at the time of his death, or otherwise.

Let us recall the exact provisions of the will bearing upon this subject : " And in case the said Martin Brimmer, Junior, shall die leaving lawful issue him surviving, such issue shall take an estate in fee in the real estate hereby devised in trust for him, and the entire and absolute estate and interest in such accumulations as hereinbefore provided for. And in case the said Martin Brimmer, Junior, shall die leaving no lawful issue him surviving, then and in that case, the estate in said lands and the entire and absolute estate and interest in such accumulations shall descend to and vest in my

heirs at law in the same manner that it would have descended to and vested in them if this will had not been made and the said Martin Brimmer, Junior, had died without issue before my decease."

Taking these words altogether it seems difficult to misunderstand them or build upon them the conflicting theories and interpretations which we find in the briefs of counsel. The estate is to descend to and vest in the heirs at law of the testator in the same manner that it would have done had the will not been made and Brimmer, Jr., had died without issue before the decease of the testator. If no will had been made, the property would have gone in the course of intestacy to the heirs of James Wadsworth existing at the time of his death. We do not see that the concluding words, " and the said Martin Brimmer, Junior, had died without issue before my decease," qualify the result we have just indicated. They rather supplement that statement and strengthen it. Nor do the words " then and in that case," even using the word " then " as an adverb of time taken in connection with the whole paragraph, tend to postpone the period of ascertaining the parties entitled to the remainder. This view is sustained in *Whall* v. *Converse* (146 Mass. 345) and *Bullock* v. *Downes* (9 H. L. Cas. 1) and in *Dove* v. *Torr* (128 Mass. 38); *Doe* v. *Lawson* (3 East, 278) and the strong recent cases of *Corse* v. *Chapman* (153 N. Y. 466) and *Hersee* v. *Simpson* (154 id. 496).

· In *The Matter of Seaman* (147 N. Y. 69) the 6th provision of the will was as follows : " All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath to my executors hereinafter named in trust, to apply and pay over the income of one equal undivided half part thereof to my said adopted daughter and niece Elizabeth Seaman during her natural life, *and upon her decease* I give, devise and bequeath said equal undivided one-half part of my estate so held in trust for my said adopted daughter and niece to the children of my nephew George A. Seaman *living at the time of her death,* share and share alike."

Judge FINCH in construing this provision (at p. 74) says : " I think the four children of George took vested interests in the residuary property, both real and personal, at the *death of the testator,* subject on the one hand to open and let in after-born children, and on the other to be defeated by death without issue during the running of the life estates." (Citing *Campbell* v. *Stokes,* 142 N. Y. 23.)

Again, the learned judge says : " It is obvious that a right of succession to the estates in remainder passed at once on the death of the testator to the four children and was a vested interest, though subject to be defeated or modified by subsequent contingencies."

While this was a transfer tax case, it involved the construction of a will of which the language would seem to indicate that the title did not vest in the children of George until the termination of the life estate, the language being stronger in that direction than in the case at bar. But courts incline to a construction that will vest the remainder at once upon the death of the testator. This is essential for the permanency of estates and to avoid uncertainty as to titles. (*Byrnes* v. *Stilwell*, 103 N. Y. 460 ; *Whall* v. *Converse, supra ; Du Bois* v. *Ray*, 35 N. Y. 162.)

And the tendency of the courts, both in England and in this country, has been steadily in the direction of maintaining this view and of holding that the remainder vests in the heirs in existence at the time of the death of the testator. (*Doe* v. *Lawson, supra ; Mortimore* v. *Mortimore*, L. R. [4 App. Cas.] 448 ; *Holloway* v. *Holloway*, 5 Ves. 399 ; *Harrington* v. *Harte*, 1 Cox Ch. 131 ; *Ware* v. *Rowland*, 2 Phill. 625 ; *Seifferth* v. *Badham*, 9 Beav. 370 ; *Baker* v. *Gibson*, 12 id. 101 ; *Harrison* v. *Harrison*, 28 id. 21 ; *Urquhart* v. *Urquhart*, 13 Sim. 613 ; *Minot* v. *Tappan*, 122 Mass. 535 ; *Abbott* v. *Bradstreet*, 3 Allen, 587 ; *Buzby's Appeal*, 61 Penn. St. 111 ; *Kellett* v. *Shepard*, 139 Ill. 433.)

The following cases in the courts of our own State may be profitably consulted upon this subject : *Matter of Seaman (supra) ; Campbell* v. *Stokes (supra) ; Du Bois* v. *Ray (supra) ; Warner* v. *Durant* ('76 N. Y. 133) ; *Cushman* v. *Horton* (59 id. 149) ; *Woodward* v. *James* (115 id. 346) ; *Sage* v. *Wheeler* (3 App. Div. 38, opinion HARDIN, P. J.) (And see, also, *Hersee* v. *Simpson*, 20 App. Div. 100, and opinion by HARDIN, P. J.)

In *Kellett* v. *Shepard (supra)* the court says : " Ordinarily the words " heirs " or " heirs at law " are used to designate those persons who answer this description at the death of the testator ; * * * hence, where the word occurs in a will it will be held to apply to those who are heirs of the testator at his death, unless the intention of the testator to refer to those who shall be his heirs at a period subsequent to his death is plainly manifested in the

will.   This construction or definition is not changed by the fact that
a life estate may precede the bequest to the heirs at law, nor by
the circumstance that the bequest to the heirs is contingent on
an event that may or may not happen."

This we regard as a correct exposition of the law upon 'that
subject.

In *Buzby's Appeal* (*supra*) the testator devised real estate to his
son for life, with remainder over to his children living at his death,
and the lawful issue of such as should then be deceased, and for the
want of such child or children, then to the testator's " right heirs ·
forever."

.It was held that the heirs of the testator, at his death, took under
the last limitation.

The court in that case said : " But whether the limitation over  to
the testator's heirs, in the event of the death of the tenant for life
without children living, is regarded as an executory devise or a con-
tingent remainder, will not affect or vary the rule of construction as
it respects the heirs entitled to take.   The limitation to the heirs
must be construed to mean those who were such at the testator's
death unless a different intent clearly appear.   Whether, therefore,
the remainder be regarded as contingent or vested, the heirs of the
testator who were living at his death are entitled to it under the
limitation."

In *Doe* v. *Lawson* (*supra*) the testator devised real estate to trus-
tees for the use of his son for life with remainder to his issue; but in
default of such issue, or if he contracted a certain marriage, he *then
and thereupon* devised the said premises to a nephew for life, and
after his death devised the premises to trustees for and amongst such
persons as should be proved to be next of kin to the testator, in
such parts as they would have been entitled to take in his personal
estate under the Statute of Distributions as if the testator had died
intestate.   The limitation over having taken effect, it was held that
the testator's next of kin, at his death, took.

Lord ELLENBOROUGH, in that case, said : " The question is whether
by the words next of kin, &c., as here used, the testator meant such
as should answer that description when the limitation over was to
take effect; that is, in case of John Lawson's marriage with any of
the daughters of J. Ismay, or of his death without issue, or whether

the testator meant such as should be his next of kin at the time of his own death.   The limitation over is to 'such person and persons, &c., as shall appear and can be proved to be his next of kin, in such parts and proportions as they would, by virtue of the statute of distributions, have been entitled to his personal estate if he had died intestate.'

"Now, when would they have been entitled to his personal estate if he had died intestate?   At the time of his death.   Then the distribution must be made at such a time as will best meet the words of the will, which is at his death, when the title by intestacy accrues, and must, therefore, be made amongst those persons who would then have been entitled to share as if he had died intestate, or to their representatives."

The strong application of the rule in that case to the one at bar is apparent.

The cases that form exceptions to the rule that a devise to a class of persons takes effect as to those who constitute the class at the death of the testator may be resolved into three kinds :

*First,* where there is no present gift, but a future interest is devised not directly to a given person, but indirectly through the exercise of a power conferred upon the trustees, thus leaving the devise contingent.

*Second,* where the remainder is given to the heirs of others than the testator.   In that case the beneficiaries do not take until the decease of the person of whom they become heirs.

*Third,* where the beneficiaries of the remainder are both the heirs of the testator and the heirs of third persons, and all the beneficiaries are resolved by the will into one class, and in that event the remainder does not vest until all the class can be ascertained.

The case of *Campbell* v. *Rawdon* (18 N. Y. 412) and the cases hereinafter cited as those upon which the counsel for the appellant Murray relies, illustrate these exceptions.

The learned counsel for the appellant Murray cites *Delaney* v. *McCormack* (88 N. Y. 174) ; *Bisson* v. *West Shore Railroad Co.* (143 id. 125), and *Matter of Baer* (147 id. 348) as sustaining his contention.   In each of these cases the circumstances and conditions were materially different from the one at bar.

In *Delaney* v. *McCormack* there was a direction to sell real estate and distribute the proceeds among the testator's next of kin as personal estate, and the court says (at p. 183) that there was no gift to the next of kin and no language importing such gift except in the direction to convert the real estate into money and then make distribution. And that in such cases the rule is settled that time is annexed to the substance of the gift and the vesting is postponed.

In the case at bar there was a direct devise to the heirs of the testator with the right of possession upon the termination of the life estate.

In the *Bisson* case a trust was created in certain real estate for the benefit of the testator's wife during widowhood, and upon her death or remarriage he gave the estate to his wife and *to his wife's heirs* and assigns forever, share and share alike. The court held that the effect of this provision was to resolve the testator's heirs and those of his wife into one class, and that they took *per capita* and not *per stirpes;* and that inasmuch as the heirs of the wife could not be ascertained until her death, therefore, the remainder did not vest until after her death.

In the case at bar no such condition existed.

In the *Baer* case the will devised certain property in trust for the use of the testatrix's daughter, and at her death to her issue, if any. In case the daughter died without issue, the trustees were directed to apply the rents and profits of the property to the support of another daughter during her life, and, at her death, to convey the remainder to her children and lawful heirs of the testator's brother Harmon Hendricks, deceased, to share and share alike *per stirpes.* The direction, therefore, was to convey to a class composed of the children and lawful heirs of the brother, as the heirs of the brother could not be ascertained until his death, and title, therefore, could not vest in the beneficiaries at the death of the testatrix, but was necessarily postponed until the brother's death.

But the appellant's counsel chiefly relies upon *Sears* v. *Russell* (8 Gray, 86) (a Massachusetts case). There, the devise, in the first instance, was to the testator's daughter for life, and on her death to her children, if any, " or in default of any child or issue then living to convey the same to my heirs at law," with an express proviso that in no event should the testator's sons-in-law and daughters-

in-law be permitted to take, the testator further declaring that in case of the decease of one or more of his grandchildren without issue, he gave and devised the same to his heirs at law. The court held in that case, in effect, that there must be such a construction put upon the will as would not defeat the declared intention of the testator to exclude the wives of his sons and the husbands of his daughters from taking under the will, and the court continues : " The rules of construction, that the word ' heirs ' in a will is usually construed to mean those who are such at the time of the testator's decease, and that estates created by devise are to be held to be vested rather than contingent, must give way to the controlling rule of interpretation that the intent of the testator is to govern if it does not conflict with the rules of law,    *    *    *    and if it be found to conflict it does not change the rule of construction. The will must fail of effect so far as it violates the rules of law, not because the intent of the testator does not control its construction, but because the law will not permit his intent to be accomplished."

There is no such feature in the case at bar. There is no express declaration indicating the intent to exclude those who shall not be the blood of the testator. But the counsel for Murray seeks to infer such an intent, though not expressly declared in the will of James Wadsworth. That will shows much consideration for the Brimmer line. The father of Martin, Jr., is made one of the executors of the will as well as a trustee of the property of Elizabeth, the only surviving daughter of the testator, and also a trustee of the grandson of the testator, Martin Brimmer, Jr. The real estate of the Brimmer trust is devised to the issue of Martin, Jr., after the end of the life estate, should such issue appear and through the line of such issue the estate might have been diverted to the strangers of the blood of the testator.

The personal property of the trust is bequeathed to Martin, Jr., absolutely if he arrives at the age of twenty-one years. The single circumstance that Martin, Jr., is excluded as a direct heir of the testator to the Brimmer trust is not in our judgment sufficient, in view of all the provisions. of the will, to lead to the conclusion that the testator intended to exclude him from any property that might come to him as an heir of Elizabeth or of either of the sons of the testator.

There is no doubt but that the testator intended that the share of Elizabeth should descend to her issue if she had any; but it was not and could not have been within the contemplation of the testator that such issue would be an alien and disqualified by law from inheriting from his mother. The son, being an alien, could not inherit under the laws of this State, and, therefore, upon the death of the mother her property passed to her heirs at law, the same as though she was childless. (*Orser* v. *Hoag*, 3 Hill, 79.)

We must construe this will in the light of the circumstances and conditions of the time when it took effect. We cannot view it in the backward light that half a century has thrown upon it and construe it under the conditions that followed. While we may regret that the son of Elizabeth has been disinherited by the laws of our State in relation to alienage, and that the purpose of the testator as to any heir that his daughter might have has been thus defeated, and while we sympathize with the disposition that the courts have manifested to construe wills so that lineal descendants will not be disinherited, where such a construction can reasonably be made, we are not permitted to make wills by construction to suit our views of equity, but we must take those instruments as we find them and construe them by the light which surrounded their execution and not as a result of the conditions which thereafter occurred and which could not have been foreseen or provided for.

Nor are we permitted to violate the plain injunctions of the law upon this subject that the courts with singular uniformity have laid down for our guidance. Nor can we annex " futurity to a gift " in violation of the plain commands of the testator.

We have carefully examined the grounds upon which the other appeals were taken, and we are of opinion that the disposition made in that regard by the trial judge is correct and that the modification of the judgment sought by the other appellants should be refused.

As the questions in this case are interesting and highly important and to some extent novel, and as the action seemed necessary for the proper construction of this will, we think it an appropriate case that the costs of all the parties that are represented by attorneys in the case should be paid out of the fund in controversy.

All concurred, except FOLLETT, J., not voting.

HARDIN, P. J. :

Besides the authorities cited in the opinion of WARD, J., I have looked at the following cases: *Moore* v. *Lyons* (25 Wend. 119); *Mitchell* v. *Knapp* (54 Hun, 500); *Nelson* v. *Russell* (135 N. Y. 140); *Corse* v. *Chapman* (153 id. 466), and I concur in the conclusion stated in his opinion.

Judgment affirmed, with costs.